Rockingham
No. 85-123

LEONA A. SCIAUDONE, ADMINISTRATRIX OF THE ESTATE
OF FAY SHANKLE & a.

v.

ROBERT L. STEUK, ADMINISTRATOR OF THE ESTATE
OF WALTER A. SHANKLE, AND
STATE FARM FIRE & CASUALTY COMPANY

July 9, 1986

*Cullity, Kelley & McDowell*, of Manchester (*Joseph F. McDowell, III*, on the brief and orally), for the plaintiff.

*Holland, Donovan, Beckett & Welch P.A.*, of Exeter (*Stephen G. Hermans* on the brief and orally), for the intervenor Patrick A. Mastrolillo.

*Scotch & Zalinsky*, of Manchester (*Barry M. Scotch* on the brief and orally), for the defendant State Farm Fire & Casualty Company.

SOUTER, J.  The plaintiff and the intervenor appeal from a decree of the Superior Court (*Gray*, J., acting on the report of a Master, *Louie C. Elliot, Jr.*, Esq.) entered on a petition for declaratory judgment. The court found that an insurance policy issued by the defendant State Farm Fire and Casualty Company excluded coverage for any liability of the late Walter Shankle for unintentionally causing the death of the plaintiff's decedent or injuring the intervenor's son. We affirm.

In June 1980, Walter and Fay Shankle were husband and wife, living in Candia with Fay Shankle's son from a prior marriage, Patrick M. Mastrolillo. On June 15 of that year the Shankles purchased a one-year homeowners policy from State Farm, naming both Walter and Fay as insureds. On October 20, 1980, the Shankles were divorced under a decree that also divided their Candia prop-

erty, on a portion of which Fay continued to reside with Patrick. No one notified State Farm of the divorce. On November 16, 1980, Walter entered Fay's house, where he shot and killed Fay, shot and injured Patrick, and then committed suicide.

The administratrix of Fay's estate brought a wrongful death action against the administrator of Walter's estate, alleging both intentional and unintentional tortious conduct. Patrick's father made similar allegations in an action in two counts, one brought on Patrick's behalf in his capacity as Patrick's guardian and next friend, and one brought on his own behalf for the expenses of Patrick's medical care and for his own emotional suffering. The administratrix of Fay's estate then filed the present petition under RSA 491:22 seeking a declaration that State Farm would be responsible for any judgment based on Walter's unintentional conduct, and Patrick's father intervened with a similar claim. The master recommended dismissal of the petition.

The appeal turns on the application of five policy terms:

Definitions

> "Throughout this policy, 'you' and 'your' refer to the 'named insured' shown in the Declarations and the spouse if a resident of the same household, and 'we', 'us' and 'our' refer to the Company indicated in the Declarations."

> "'[B]odily injury' means bodily harm . . . including required care . . . and death resulting therefrom."

> "'[I]nsured' means you and the following residents of your household:

>> a. your relatives;
>> b. any other person under the age of 21 who is in the care of any person named above."

Exclusion

> "Coverage L—Personal Liability and Coverage M—Medical Payments to Others do not apply to:
>
> . . . .
>
>> g. bodily injury to you or any insured within the meaning of part (a) or (b) of the definition of insured."

Condition

> "Severability of Insurance. This insurance applies separately to each insured. This condition shall not increase our limit of liability for any one occurrence."

The master found that the exclusion barred coverage for any lia-

bility to Fay's estate or to Patrick. He reasoned that because the policy defined "you" to include the named insured, and Fay was so named, the exclusion of liability coverage for *"bodily injury* to you" referred to Fay and excluded coverage for her death. Because Fay was a named insured, the master also found the exclusion applicable to Patrick's direct claim for injury. Under the definition of *"insured"* as including the named insured's relatives living in the named insured's household, Patrick was an *"insured* within the meaning of part (a) . . . of the definition of *insured,"* with the result that coverage for liability arising from bodily injury to him was excluded.

As against this analysis, the plaintiff and the intervenor contend that the master erred in failing to treat the policy as if it had become two separate policies at the time of the divorce, one naming Fay as insured, the other naming Walter. On this assumption Fay would not have been a named insured under Walter's policy, nor would Patrick have been an additional insured, and the exclusion would not preclude the coverage sought here. In support of this position the appellants offer four arguments, none of which in our judgment is availing.

There is, first, the argument that "you" is defined or used ambiguously, in the sense that readers of the policy might reasonably differ on whether "you" continued to refer to Fay after the divorce. *See Laconia Rod & Gun Club v. Hartford Acc. & Indemn. Co.*, 123 N.H. 179, 182, 459 A.2d 249, 251 (1983). They reason that the ambiguity must be resolved against State Farm under the rule in *Trombly v. Blue Cross/Blue Shield of New Hampshire-Vermont*, 120 N.H. 764, 423 A.2d 980 (1980). The ambiguity argument fails, however, for the simple reason that there is nothing arguably ambiguous in the policy's definition of "you." It "refer[s] to the 'named insured.'" Fay was a named insured; the reference to *"bodily injury"* in the exclusion was therefore a reference to her bodily injury and that of her relative. It could not be clearer.

Second, the intervenor argues that the exclusion should be held inapplicable because its purpose is to reduce the risk of collusion within a family, *see National Farmers Union Property & Casualty Co., v. Maca*, 26 Wis. 2d 399, 405, 132 N.W.2d 517, 520 (1965), a risk which was effectively terminated with the divorce. But even if we assume that such was the reason for the exclusion, and that the exclusion sweeps more broadly than necessary in this case, those reasons are insufficient to authorize the court to ignore unambiguous policy language and rewrite the contract. *See Charest v. Union Mut. Ins. Co.*, 113 N.H. 683, 686, 313 A.2d 407, 409 (1973).

Third, the intervenor argues that the policy must be construed as "divisible" in the sense of providing several, rather than joint coverage of the insureds. The intervenor rests this position on the theory underlying *Hoyt v. New Hampshire Fire Insurance Co.*, 92 N.H. 242, 29 A.2d 121 (1942), and upon the policy's severability clause, quoted above. Neither *Hoyt* nor the severability clause, however, addresses the issue now before us.

*Hoyt* construed the provisions of several fire policies covering the interests of three tenants in common, one of whom set the fire that destroyed the insured premises. This court applied a general rule of construction, that interests of joint tenants are severally insured, with the practical result that the fault of one joint tenant will not defeat coverage of the interests of the others. It is obvious, however, that the *Hoyt* rule on the severability of insurable interests has no application to the construction of unambiguous policy provisions identifying the insureds. Nor is the present policy's severability clause any more relevant. Whatever its effects may be in identifying the nature of an insured interest and the extent of coverage, the clause has nothing to do with identifying the insureds.

The plaintiff raises the fourth argument for treating the policy as if it were two separate policies, by claiming that the insureds' reasonable reliance on assurances of coverage given by State Farm's agent should estop the company from applying even an unambiguous exclusion. *See Lariviere v. New Hampshire Ins. Group*, 120 N.H. 168, 172, 413 A.2d 309, 312 (1980). The evidentiary record, however, provides no support for applying the *Lariviere* rule.

The plaintiff and the intervenor offered the deposition of the agent who sold the policy to the Shankles. The agent gave the following answers in response to questions from plaintiff's counsel:

"A. I tell them that it covers them if somebody else sues them, and that it is a good coverage to have . . . . I tell them about the medical coverage, that if somebody were to arrive on their property and sue them, that it is better to have the medical coverage . . . .

. . . .

. . . I tell them that the liability . . . covers them for a suit against them. In other words, under the medical, if their son falls down the stairs, he does not have a claim on his own medical, but if their mother comes and visits them, and she falls down the stairs, then she can get coverage because she is not a resident in the household.

Q. A resident relative in the household, right?

A. It doesn't have to be a relative.

Q. So the explanation you gave that they wouldn't be covered, their child wouldn't be covered, you tell them that as to medical coverage?

A. Sure. It goes without saying on liability, and if they ask the question about the liability, I would go into that more in detail.

Q. Generally, you wouldn't go into the exclusions?

A. The exclusions, no, not generally.

Q. And you certainly wouldn't tell the average applicant for homeowners that the coverage as to them will be excluded under the medical payments and the liability coverage?

A. Oh yes, I usually do. Under the medical, particularly, because a lot of people have a misconception about the medical, but usually not in the liability. When you explain to them that the liability is for someone making a claim against them, it is not them making the claim against themselves, or each other or against anybody else—I think that pretty well covers the subject."

This evidence does not support a conclusion that the agent gave any assurance that the policy would provide the coverage in issue; its tendency is quite the contrary. Further deposition testimony from the agent, moreover, is devoid of any indication that he suggested there would be such coverage if the marital status of the named insureds changed.

"Q. When you take an application for customers such as Mr. and Mrs. Shankle, do you tell them that if there are any changes in their marital status they should let you know?

A. Absolutely.

Q. Do you know if you told Mr. and Mrs. Shankle that?

A. I know I did.

Q. You told them if they ever got divorced they should make sure they let you know?

A. Yes, I tell every customer that.

Q. Do any of them get irritated when you tell them that?

A. No.

Q. So you are sure you told Mr. and Mrs. Walter Shankle

> if they ever got divorced they should make sure they let you know about the change of coverage?
>
> A. I'm not sure I would have worded it that way. I would have worded it, if there is any change in the marital situation, I should be notified."

The appellants cannot derive coverage by estoppel from this record. We are left, rather, with the unambiguous policy terms excluding coverage for liability arising either from Fay's death or from Patrick's injuries.

It remains for us to consider the position of the intervenor, Patrick's father, that there is coverage for any liability directly to him, as distinguished from liability to Patrick. The intervenor has made two claims, one for his expenses in providing medical care to Patrick, and one for his own emotional injury caused by his concern for Patrick.

The master correctly found no coverage for the medical expense liability because the policy excludes coverage for *"bodily injury* to . . . any *insured."* Patrick is an insured and bodily injury includes "required care" for treatment of the injury. Therefore, the policy does not insure against liability to the intervenor for the cost of such care.

The master disposed of the intervenor's final claim by finding that liability for his emotional injury was outside the scope of the policy coverage. The intervenor has not briefed or argued this issue, which is therefore waived. *See Fleming v. Martin,* 122 N.H. 128, 130, 442 A.2d 584, 585 (1982).

*Affirmed.*

All concurred.