NATIONAL FARMERS UNION PROPERTY & CASUALTY COMPANY, Plaintifff and Respondent, v. MACA (LOUIS L.), Defendant: MACA (ROBERT), Defendant and Appellant.

*January 6—February 2, 1965.*

For the appellant there was a brief and oral argument by *James C. McKenzie* of La Crosse.

For the respondent there was a brief by *Moen, Sheehan & Meyer* and *L. E. Sheehan,* all of La Crosse, and oral argument by *L. E. Sheehan.*

FAIRCHILD, J. 1. *Does Robert Maca have an interest sufficient to permit him to appeal from the judgment?* Plaintiff insurance company argues that Robert has no interest in the policy, cannot maintain an action thereon against plaintiff, and is not a party aggrieved by the judgment.

Under Condition 7 of the policy, Robert would, however, be entitled to recover under the policy after first securing a judgment determining Louis' liability to him. Plaintiff does not claim that the declaration of no coverage in the judgment binds Robert only with respect to his claim for medical payments, nor that he was originally joined as a defendant only on that account.[1] Should he recover judgment against his father and then bring action against the company, the judg-

---

[1] See sec. 269.56 (11), Stats., concerning parties to an action for declaratory relief.

ment now before us would bar his action. The judgment affects his interest to that extent, and he has standing to appeal.

2. *The exclusions.* Coverage A is designated "Farm and Personal Liability" and includes liability for bodily injury. The policy does not apply, under Coverage A to bodily injury to "employees of an insured." Since Robert has so clearly characterized himself in his complaint in the personal-injury action as an employee of Louis with respect to the event out of which he claims liability arose, the provision just quoted would seem to exclude such liability from Coverage A, and focus attention only on Coverage C. Coverage C is designated "Employer's Liability" and includes liability for bodily injury sustained by an employee of the named insured and arising out of and in the course of employment during the prosecution of farming operations.

Plaintiff apparently has not been satisfied to take the position that Robert was an employee and therefor that any liability was excluded from Coverage A, but has taken the position that one of two other exclusions control.

The policy does not apply under Coverage A to bodily injury to "any insured within the meaning of parts (a), (b), (c) and (d) of the definition of insured." Part (b) of the definition of insured includes the spouse of the named insured and "the relatives of either . . . if such . . . relative . . . is a resident of the household of the named insured. . . ." Plaintiff insurance company claims that Robert is a resident of Louis' household, and, being Louis' son, would therefore have the protection of being an insured under the policy, but that any liability to him for bodily injury is excluded from Coverage A. Robert concedes he was living in Louis' home, but contends he was not "resident" because he did not intend to remain permanently.

Assuming that Robert was an employee, and his injury arose out of and in the course of his employment during the

course of farming operations, Coverage C would apply, but for an exclusion. The policy provides that it does not apply under Coverage C "to the named insured, spouse and members of his or her family related by blood, marriage or adoption . . . unless they are listed in the declarations as employees." Robert was not so listed. Plaintiff claims he was a member of Louis' family, and thus excluded from Coverage C. Robert says he was not a member of the family.

Expressions similar to the two involved in this case—"resident of the household" and "member of the family"—commonly appear in insurance policies, although in several different contexts. Courts have frequently decided that they do or do not cover the facts of a particular relationship, but it is difficult to deduce any general rules. Here one of the expressions is used both in a definition of insured and an exclusion from coverage, so that in one case a broad interpretation would be against the insurer and a narrow one in its favor, while in another case, the opposite would be true.

Although it is logical to expect that when one uses different descriptions in one written instrument one intends to describe different things, we fail to find any significant difference between the two expressions, at least as they relate to the facts and issues of the present case. As we stated in *Lontkowski v. Ignarski*: [2]

" 'Household' is defined by Webster as 'those who dwell under the same roof and compose a family.' That definition corresponds with the common and approved usage of the term and is supported by judicial authority. 'Persons who dwell together as a family constitute a "household." ' *Arthur v. Morgan* (1884), 112 U. S. 495, 499, 5 Sup. Ct. 241, 243, 28 L. Ed. 825.

"On the evidence in the present record the trial court could properly find that the young men, Donald and Joseph, were dwelling with their parents as a family under one roof, and hence were members of the same household. The facts

[2] (1959), 6 Wis. (2d) 561, 565, 95 N. W. (2d) 230.

that each brother was a little more than twenty-one years old, had a job, and paid something for room and board, either in money or work, did not require a finding that they were not living in the house as members of the same family. . . ."

The expressions, "resident of household," "member of family," and the like appear (as in this case) in provisions excluding from coverage liability for injury to persons standing in such relationship to the named insured.[3] The purpose has been explained as "to exempt the insurer from liability to those persons to whom the insured, on account of close family ties, would be apt to be partial in case of injury."[4] Such expressions also appear in automobile theft policies, excepting from coverage theft through acts of a member of insured's household. The exception is provided in view of the fact that persons sustaining such relationship to the insured have liberal authority to take possession of and operate motor vehicles of the insured, and unlimited opportunity for theft of such vehicles.[5] They appear in automobile liability policies in so-called "drive-other-car" provisions, excluding liability arising out of the use of other automobiles owned, hired, or regularly used by a member of the insured's household. The purpose is to avoid coverage of several vehicles owned by members of the same family, who, by their close intimacy, might be expected to use each other's cars without hindrance and with or without permission.[6] Such expressions appear, as in this case, in definitions of additional insureds.[7] The purpose is to provide protection for those whom, because of close relationship, a person obtaining a liability insurance policy would ordinarily want it to protect.

[3] Anno. 50 A. L. R. (2d) 120; 12 Couch, Insurance (2d ed.), p. 61, sec. 44:503, and p. 63, sec. 44:509.

[4] *Tomlyanovich v. Tomlyanovich* (1953), 239 Minn. 250, 58 N. W. (2d) 855, 50 A. L. R. (2d) 108, 117.

[5] Anno. 48 A. L. R. (2d) 8, 92.

[6] Anno. 86 A. L. R. (2d) 937, 941.

[7] 78 A. L. R. (2d) 1404.

Although the purposes differ, these expressions are used in all cases to describe a common type of close relationship, varying greatly in detail, where people live together as a family in a closely knit group, usually because of close relationship by blood, marriage, or adoption and deal with each other intimately, informally, and not at arm's length. The intention of the members as to the duration of the relationship would seem to be important in only two respects. The intended duration should be sufficient so as not to be inconsistent with the intimacy of the relationship, and also long enough so that it is reasonable to expect the parties to take the relationship into consideration in contracting about such matters as insurance or in their conduct in reliance thereon.

3. *Have the evidentiary facts presented by plaintiff conclusively established that Robert was a resident of Louis' household and a member of his family, under the policy provisions?* Plaintiff's burden, on motion for summary judgment, is to present such evidentiary facts as shall establish its cause of action sufficiently to entitle it to judgment.[8] Plaintiff relied largely on depositions of Robert and Louis, its adversaries, in which they described their relationship. The Macas did not attempt to show other facts. Therefore the test is whether plaintiff sustained its burden, but we must interpret the testimony and draw all reasonable inferences in favor of the Macas. Judge RORAFF applied this test in effect when he said that in his opinion a finding of a jury that Robert was not a resident of the household nor a member of the family could not be sustained.

The depositions are lengthy, and we shall endeavor to eliminate immaterial details in summarizing the facts.

Robert was raised on his father's farm in Iowa. In 1949 he married and established a home. He was divorced, but

---

[8] Sec. 270.635 (1), Stats.

continued to live apart from his parents. They moved to Wisconsin. In December, 1960, he lost his job in Iowa as a postal employee. In the next few months, he looked for work in Wisconsin, and visited his parents. In May, 1961, Robert brought his belongings to Louis' farm and stayed there until after his accident in October. He set up his own bed in an upstairs room, but did not unpack the rest of his furniture. He had no living quarters elsewhere. He obtained a job at the Veterans' Hospital at Tomah, a few miles from the farm. This was a permanent position, although subject to a one-year probationary period. He desired, however, to find other employment, and sought postal and other jobs elsewhere. He inquired about living accommodations in the locations where he looked for work. He did not pay board, but was to be paid for work he occasionally did on the farm. He had the use of his father's car if desired and brought friends home at times. He ate his meals at home until he began to work, and after that ate breakfast and lunch at work and ate supper at home when he wanted to.

Robert and Louis spoke of the situation as temporary and Robert continued to plan to get work elsewhere and to move if he got it. The relationship had continued for five months before the accident, and although Robert was still hoping and trying to get a different job, nothing had materialized.

Robert's counsel argues that the word "resident" must be construed with the connotation of "domicile," and cannot apply to one who does not have the present intention to remain. We have so construed the word "resident" where used in certain statutes.[9] The word, however, "is an elastic term which may refer to a temporary sojourner as well as

[9] *Eau Claire County v. Milwaukee County* (1964), 24 Wis. (2d) 292, 128 N. W. (2d) 666; *State ex rel. Linarys v. Dorwin* (1964), 22 Wis. (2d) 474, 126 N. W. (2d) 49; *Carlton v. State Department of Public Welfare* (1956), 271 Wis. 465, 468, 74 N. W. (2d) 340.

to one possessing a legal domicile." [10] We think that one is not a resident of the household or member of the family if, even though he has no other place of abode, he comes under the family roof for a definite short period or for an indefinite period under such circumstances that an early termination is highly probable. If, however, the circumstances of his stay are otherwise consistent with a family or household relationship, and his stay is likely to be of substantial duration, the fact that he attempts to find employment, gaining which he would live elsewhere, would not, in our opinion, prevent his being a resident of the household or a member of the family. Robert had a job where he apparently could have continued for a long time. His efforts to find other jobs had met with no success. We consider that he was a resident of the household and member of the family under the policy, even under the testimony most favorable to him.

4. *Waiver or estoppel.* Robert alleged in his answer that Gabower, plaintiff's agent, informed Louis when he applied for the policy that it would not be necessary to list Robert in the declarations as an employee. Although the answer did not allege that plaintiff was thereby estopped to rely upon, or had waived the exclusion under Coverage C, Robert's counsel now argues that there was estoppel or waiver. [11] An affidavit by Gabower states that Louis and Gabower talked about Robert; Gabower told Louis that in order to cover claims by Robert, it would be necessary to list him on the policy; that Louis instructed Gabower not to list Robert. No counteraffidavit was filed. Louis Maca testified on adverse examination as follows:

---

[10] *Smith v. Whitewater* (1947), 251 Wis. 313, 316, 29 N. W. (2d) 37. See 37 Words and Phrases, Resident, pp. 398–434.

[11] See *Megal v. Kohlhardt* (1960), 11 Wis. (2d) 70, 82, 103 N. W. (2d) 892, requiring estoppel to be pleaded, and *Allstate Ins. Co. v. Moldenhauer* (7th Cir. 1952), 193 Fed. (2d) 663, requiring waiver to be pleaded as an affirmative defense.

"*Q*. Mr. Gabower told you if he [Robert] was to be named as an employee or otherwise named in the policy, there would be an additional premium? *A*. Gabower stated the policy covered all part time labor and being that Robert was employed at the Veterans Administration, even if he helped me he would not be full time man; just part time.

". . .

"*Q*. At the time you made out the application did you have any discussion about Robert being covered in any way, by name? *A*. No.

". . .

"*Q*. You also understood did you not, that members of the family residing in the household under the terms of the policy could not make claim against you which would be covered by the policy did you not? *A*. Yes."

Gabower's affidavit, if it stood alone, would defeat any claim that Louis was misled into omitting Robert's name from the policy. Louis did not testify that Gabower told him Robert would be covered as an employee without being listed. Even if one interpreted Louis' answer first above quoted as implying such representation, the answer so interpreted would be flatly contradicted by the last two answers above quoted. We do not consider that Louis' testimony was sufficient to raise a jury issue, and, as has been noted, no counter-affidavit was filed.

5. Counsel for plaintiff suggests that we disregard the brief filed on behalf of appellant Robert Maca and dismiss the appeal because of many violations of our rules. Although we agree that the violations are numerous and flagrant, we have decided the appeal on its merits, awarding plaintiff double costs.

Appellant's appendix contained only the decision of the trial court. (Actually a portion of the decision was omitted, but that portion relates to the ruling on estoppel and waiver by conduct after the accident, a ruling not challenged on

appeal.) The appendix did not contain material portions of the pleadings or judgment to be reviewed. There was no abridgement of the record except that the various papers were listed by title. The statement of facts contained a great deal of counsel's interpretation of the facts and a number of seemingly factual statements not supported by the record. References to pages of the record were infrequent and of course there could be no references to pages of the appendix. Some of the comments directed at the decision of the trial judge bordered on disrespect.

*By the Court.*—Judgment affirmed. Plaintiff-respondent may tax double costs.

