FIREMEN'S INSURANCE COMPANY
OF NEWARK, NEW JERSEY,
Respondent,

v.

David VIKTORA, et al., etc., Appellants,

and

Sandra Olson, et al., Defendants.

No. 81–467.

Supreme Court of Minnesota.

April 30, 1982.

Arthur, Chapman & Michaelson and Robert Kettering, Minneapolis, Darrold E. Persson, Hibbing, for appellants.

Hanft, Fride, O'Brien & Harries, Duluth, for respondent.

WAHL, Justice.

Firemen's Insurance Company of Newark, New Jersey (Firemen's) sought a judicial determination pursuant to Minn.Stat. c. 555 (1980) that defendant David Viktora was not an insured under his parents' homeowner's liability insurance policy and that, therefore, Firemen's had no duty to defend or indemnify Viktora in the action commenced against him by defendant Sandra Olson. The question before the district court, and before us, is whether, at the time of the accident on October 7, 1977, David Viktora was a resident of the household of the named insured, his parents, Jerry and Mary Ann Viktora. The trial court found that he was not and granted the relief requested by Firemen's. We reverse.

The facts, stipulated to by the parties, are as follows: In July 1976, David Viktora, then aged 23, obtained employment at the Hibbing Taconite Company (company) and moved from his parents' home in Two Harbors to Hibbing, Minnesota. He lived first in a mobile home park maintained by the company as a residence for company employees and then, in March 1977, moved to an apartment in Hibbing at 607 East 23rd Street, where he lived by himself until the Hibbing Taconite Steelworkers went on strike on August 1, 1977.

Unable to work, Viktora returned to Two Harbors to live with his parents. He remained at his parents' residence from August 1977 until the strike ended on November 27, 1977. Viktora and his Hibbing landlord had agreed that the apartment would be held for Viktora in exchange for Viktora's promise to pay one-half of the monthly rent for the period of the strike after the strike ended.

Viktora did not move his household appliances from the Hibbing apartment to his parents' home. He did bring clothes and some personal items. He ate all his meals at his parents' home and slept there during the entire strike period. He did family chores but did not pay room or board to his parents. His mother did his laundry, and he received mail at his parents' home.

On October 7, 1977, while Viktora was living with his parents, he was involved in an incident which gave rise to a suit against him by defendant Sandra Olson. Claiming to be an insured under a homeowner's insurance policy issued by Firemen's to his parents which provided coverage from December 31, 1976, through December 31, 1977, Viktora tendered the defense to Firemen's. The policy provided certain liability coverage, including personal injury liability coverage, with limits of $50,000 for personal injury to any one person. The pertinent coverage provided:

This company agrees to pay on behalf of the insured all claims which the insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence.

The general policy defined the term "insured" as:

(1) the Named Insured stated in the Declaration of this policy;

(2) if residents of the Named Insured's household, his spouse, the relatives of either, and any other person under the age of twenty-one in the care of the insured.

■ Appellants argue first that the definition of "insured" in the Viktoras' homeowner's policy is, at the very least, unclear and that, because it is an ambiguous provision extending coverage, this court should construe it broadly to provide coverage. Where the language is unambiguous, we will not render a construction which is more favorable to finding coverage but will apply the phrase to the facts of the case in order to give effect to the plain meaning of the language. *Ostendorf v. Arrow Insurance Co.*, 288 Minn. 491, 182 N.W.2d 190 (1970). To be an "insured," Viktora must have been a "resident[ ] of the Named Insured's household" at the time of the incident.

This court has found language similar to that in the Firemen's policy not to be ambiguous and, therefore, not subject to application of rules of construction which favor finding coverage. In *Tollefson v. American Family Insurance Co.*, 302 Minn. 1, 226 N.W.2d 280 (1974), the insurance policy extended automobile coverage to "nonowned" automobiles driven by relatives who were "residents of the same household" as the named insured. There we found that:

The terms of the contract were clear and unambiguous. As to an unowned automobile, there was coverage only with respect to relatives of the named insured who were "residents of the same household." There was, therefore, no occasion to charge the jury, as the court did, that the language of the policy "must be liberally construed in favor of the insured and strictly construed against the insurer."

*Id.* at 5, 226 N.W.2d at 283.

The Wisconsin Supreme Court has also held that "the terms 'resident or member of the same household,' as used in policies of automobile liability insurance, are not ambiguous and, therefore, should be construed in light of their plain and common meaning." *Pamperin v. Milwaukee Mutual Insurance Co.*, 55 Wis.2d 27, 37, 197 N.W.2d 783, 789 (1972).

What then is the plain meaning of the words, an individual is a "resident[ ] of the Named Insured's household" as applied to the facts of this case? Did the trial court err in finding Viktora not a resident and, therefore, not insured?[1]

Courts have set out certain factors to be considered in examining the facts of each case to determine if an alleged insured is residing in the named insured's household. In *National Farmers Union Property & Casualty Co. v. Maca.*, 26 Wis.2d 399, 132 N.W.2d 517 (1965), the policy of insurance provided coverage for farm accidents except for those causing bodily injury to the named insured, his spouse and any relative of the named insured who was a resident of the same household. The Wisconsin court found that a 32-year-old son who had been living with his parents for 5 months prior to a farm accident, who was employed outside of the farm at the time of the accident, and who was seeking employment which would cause him to move from the farm, was a resident of the father's household. Citing to *National Farmers Union*, the *Pamperin* court identified three factors to consider in determining residency in the named insured's household:

(1) Living under the same roof; (2) in a close, intimate and informal relationship; and (3) where the intended duration is likely to be substantial, where it is consistent with the informality of the relationship, and from which it is reasonable to conclude that the parties would consider the relationship ". . . in contracting about such matters as insurance or in their conduct in reliance thereon."

55 Wis.2d at 37, 197 N.W.2d at 788 (citations omitted).

1. We will overturn the district court's findings of fact only if those findings are clearly erroneous. Minn.R.Civ.P. 52.01.

This court has generally encompassed the first two *Pamperin* factors by defining "household" in its common and ordinary meaning "for insurance purposes as generally synonymous with 'family' and as including those who dwell together as a family under the same roof." *Van Overbeke v. State Farm Mutual Automobile Insurance Co.*, 303 Minn. 387, 392, 227 N.W.2d 807, 810 (1975); *Tomlyanovich v. Tomlyanovich*, 239 Minn. 250, 58 N.W.2d 855 (1953). We have also considered duration of stay to be significant. In *Fruchtman v. State Farm Mutual Automobile Insurance Co.*, 274 Minn. 54, 142 N.W.2d 299 (1966), we held that the plaintiff, Fruchtman, a young man of 27, and his mother were not members of the family residing in the same household where Fruchtman had been self-supporting since the time he left high school and had not been physically present in the home for more than a week or two on any one occasion for a period of approximately 2½ years prior to the accident, though he used the home as a mailing address. At the time of the accident he was home on a 2-week visit between military assignments. "[T]he words 'residing in the same household' imply a more enduring relationship," we said, "than was here manifested." *Id.* at 57, 142 N.W.2d at 301.

While Fruchtman's 2-week visit did not constitute a duration reflecting residency in the same household as his mother, in *Rosenberger v. American Family Mutual Insurance Co.*, 309 N.W.2d 305 (Minn.1981), a case decided after the district court's decision in this case, we found that 2 months constituted sufficient duration to find a returning stepchild to be a resident of her mother and stepfather's household. We expressly distinguished *Fruchtman*, finding that in that case the son was self-supporting while at home and Rosenberger was not; that Fruchtman's stay was 2 weeks and Rosenberger's more than 2 months; and that in *Fruchtman* the son had specific future plans to leave and Rosenberger had no such plans.

█ Viktora's situation is indistinguishable from that of Rosenberger: he was not self-supporting while at his parents' home; his plans to leave were no more specific than those of Rosenberger to find a job and move out; and, significantly, Viktora lived with his parents for nearly 4 months. Rosenberger's residence in her stepfather's home, just as Viktora's residence in his parents' home, was understood by all parties to be of less than infinite duration. The facts, at best, were that Rosenberger could stay only until she located a job and another place to live. Viktora was living with his parents until the strike was over and he could go back to work. For all practical purposes he had no job and he had no money to pay for the rent on the Hibbing apartment. Furthermore, Viktora ate his meals, slept, received mail, and did chores at his parents' home. His mother did his laundry, and he did not pay for room and board. This is strong evidence that Viktora and his parents enjoyed the intimate, informal family relationship indicative of a legal residency. *Pamperin*, 55 Wis.2d 27, 197 N.W.2d 783.

We hold that the trial court erred in finding Viktora not a resident in his parents' household on October 7, 1977, and, therefore, not an insured under the Firemen's policy.

Reversed and remanded.

KELLEY, J., took no part in the consideration or decision of this case.

OTIS, Justice (dissenting).

For the reasons set forth in *Fruchtman v. State Farm*, 274 Minn. 54, 142 N.W.2d 299 (1966), and in the dissent in *Rosenberger v. American Family Mutual Insurance Co.*, 309 N.W.2d 305, 310 (Minn.1981), I cannot agree that David Viktora was a "resident" of his parents' household. He was an adult who maintained his own home in Hibbing and was simply sitting out the steelworkers' strike as a guest of his family until he could return to Hibbing to resume work. This is not the kind of enduring relationship contemplated by the language "residents of the insured's household." I would affirm and deny coverages.

PETERSON, Justice (dissenting).

I join in the dissent of Justice Otis.