William B. KRAUSE, a minor, by Beverly Lynette KRAUSE, his natural parent and guardian, Appellant,

v.

MUTUAL SERVICE CASUALTY COMPANY, Respondent.

No. C8–86–1166.

Court of Appeals of Minnesota.

Jan. 20, 1987.

Daniel D. Reisman, Minneapolis, for appellant.

Richard J. Kruger, St. Paul, for respondent.

Heard, considered, and decided by FOLEY, P.J., and SEDGWICK and FORSBERG, JJ.

## OPINION

FORSBERG, Judge.

Appellant, William Krause, was injured in an automobile accident and claimed no-fault benefits and uninsured motorist coverage through the no-fault policy of his father, Kenneth Krause. At the time of the accident, William was living in St. Paul with his mother, Beverly Krause. His parents were separated, and no order had been issued granting either spouse temporary

custody of their two children. The trial court granted summary judgment in favor of the insurer, holding that as a matter of law the child was not a "resident" of his father's household, and that his father did not have "custody" of his son at the time of the accident.

## FACTS

Kenneth and Beverly Krause lived with their two children, William and Nicolas, in Zim, Minnesota. In April of 1980, Kenneth filed an action for dissolution of marriage. Upon commencement of the action, Beverly moved to the Twin Cities, taking the children with her. She obtained temporary custody of the children pursuant to a court order of June 2, 1980. Shortly thereafter, the dissolution proceeding was dismissed, and Beverly and the children moved back to the family home in Zim. In November 1980, Beverly and Kenneth again separated. Beverly moved back to the Twin Cities, but left the children with Kenneth. Beverly then initiated new dissolution proceedings in Hennepin County. Kenneth served a counter-petition. Both parents sought sole custody of the children.

The children lived with their father from November of 1980 until July of 1981, when they moved to the Twin Cities to stay with their mother for the remainder of the summer. The parents then agreed that the children would begin school in the Twin Cities pending the final judgment and decree in the dissolution proceeding and the court's award of custody. Much of the children's clothing and toys remained at the father's home in Zim. The children also spent Thanksgiving and Christmas with their father.

On January 30, 1982, William was struck by an uninsured vehicle while crossing the street in front of his mother's home. A claim for no-fault benefits and uninsured motorist coverage was submitted by Beverly on William's behalf to Mutual Service under a policy of insurance issued to his father. Mutual Service denied the claim, stating that William was not an "insured" under the terms of the policy. The trial

court granted the insurer's motion for summary judgment, denying William both no-fault benefits and uninsured motorist coverage under the policy.

## ISSUES

1. Did the trial court err in determining that as a matter of law William Krause was not a resident of his father's household?

2. Did the trial court err in determining that as a matter of law Kenneth Krause did not have custody of William?

## ANALYSIS

A. *No-Fault Benefits*

Mutual Service denied no-fault benefits to William stating that Kenneth did not have custody of William at the time of the accident and, therefore, William was not an insured under the terms of the policy. The Mutual Service policy provided:

Part B. NO FAULT COVERAGES

We will pay in accordance with the Minnesota No Fault Act for bodily injury to an insured, caused by accident resulting from the maintenance or use of a motor vehicle as a vehicle. * * * Insured means:

1. You, your spouse or your relatives,

2. A minor in the custody of you or a relative * * *

■ Mutual Service did not define the term "custody" in its policy. It argued, however, that the term meant physical custody. In the memorandum accompanying its order, the trial court agreed, stating:

At [the time of the accident], *neither party had custody of William* pursuant to a court order. If the word is given its practical meaning, that of physical custody, it is clear that William was in the custody of his mother.

(Emphasis supplied). Appellant claims that the trial court erred in holding that as a matter of law "custody" meant physical custody. Appellant argues that the word is ambiguous because it can mean both physical or legal custody, as evidenced by

the trial court's own memorandum. In looking to the No-Fault Act, the word custody is apparently used to indicate legal custody. The Act defines the term "insured" to include a minor *in the custody* of the named insured *who resides* in the same household with the named insured. Minn. Stat. § 65B.43, subd. 5 (1984). We agree that "custody" can mean either physical or legal custody and is therefore ambiguous. An ambiguous term must be construed against the drafter of the policy, and in favor of the insured. *Taulelle v. Allstate Insurance Co.*, 296 Minn. 247, 251, 207 N.W.2d 736, 738 (1973).

■ Respondent argues that even if "custody" is ambiguous, Kenneth did not have joint legal, or joint physical custody of William. Respondent claims that, regarding legal custody of William, evidence offered at the hearing established that it was Beverly who made such decisions as where William would receive his education and medical care. Respondent further argues that the Krauses did not have joint physical custody of William, claiming that there was no evidence that routine daily care and control was structured between the parents.

We disagree that Kenneth had neither joint legal, nor joint physical custody of William pending the dissolution decree. With regard to legal custody, Kenneth had the right to participate in any decision affecting the children in the absence of a court order granting Beverly temporary custody. Merely because the parents agreed that the children would live for extended periods of time with each parent, does not indicate that while the children were living with Beverly, Kenneth abandoned his right to participate in decisions regarding their welfare.

Moreover, there was evidence that Kenneth had joint physical custody of William, since the children stayed with him from November of 1980 until July of 1981 and spent the holidays with him. In fact, from the time of his parents' second separation until the accident, William spent nine months with his father and seven months with his mother. Although the arrangement was for extended periods of time, rather than having the children move from one parent to the other on a weekly basis, this does not show that the parents failed to structure the care and control of the children between themselves. Since both parents sought sole custody of the children there was never any intent that the children would permanently reside with either parent—their fate was ultimately in the hands of family court. Therefore, we hold that William was in the custody of his father at the time of the accident, and is entitled to no-fault benefits as an insured under the Mutual Service policy.

## B. *Uninsured Motorist Coverage*

The trial court held that William Krause was not a resident of his father's household as a matter of law, thereby denying him uninsured motorist benefits under the Mutual Service policy. The Mutual Service policy provided:

Part C. UNINSURED MOTORIST—UNDERINSURED MOTORIST COVERAGES

We will pay damages for bodily injury an insured is legally entitled to collect from the owner or driver of an uninsured motor vehicle. The bodily injury must be caused by accident arising out of the operation, maintenance or use of an uninsured motor vehicle. * * * Insured means:

1. You or any relative

&ast; &ast; &ast; &ast; &ast; &ast;

Relative means a person related to you by blood, marriage or adoption who is a resident of your household * * *

The Minnesota No-Fault Act defines resident as:

A person resides in the same household with the named insured if that person usually makes his home in the same family unit, even though he temporarily lives elsewhere.

Minn.Stat. § 65B.43, subd. 5 (1984). In its memorandum, the trial court stated:

Residence is an act, *Keller v. Carr*, 40 Minn. 428, 42 N.W. 292 (1889) (Justice Mitchell), and the act is simply bodily presence in a place, *In re Quale*, 213 Minn. 421, 7 N.W.2d 153 (1942), although, as [Minnesota Statute § 65B.43, subd. 5] indicates, temporary absence from a place does not result in a change of residence. Turning to the facts of this case, it is clear that William resided with his mother at the time of the accident.

■ The determination of whether individuals are residents of the same household rests on the facts of each case, *Pederson v. All Nation Insurance Co.*, 294 N.W.2d 693, 695 (Minn.1980). The most recent cases addressing this issue by this court are *Skarsten v. Dairyland Insurance Co.*, 381 N.W.2d 16 (Minn.Ct.App.1986), and *French v. State Farm Mutual Automobile Insurance Co.*, 372 N.W.2d 839 (Minn.Ct. App.1985). The *French* court reviewed numerous Minnesota cases dealing with this issue. Generally, in cases in which a child was denied recovery under his parents' policy, the child was emancipated and had been living independently except for times of extreme hardship, or other very brief periods of time. Often, the child had established his own residence separate from his parents' household. *French*, 372 N.W.2d at 841–43; *see Kashmark v. Western Insurance Companies*, 344 N.W.2d 844, 849 (Minn.1984); *Van Overbeke v. State Farm Mutual Auto Insurance Co.*, 303 Minn. 387, 392, 227 N.W.2d 807, 810 (1975).

In *Skarsten*, the only issue before the court was whether appellant resided in the same household as his daughter. In *Skarsten*, as in this case, the daughter was not physically living with her father at the time of the accident. She was a college student who lived in an apartment near campus in Minneapolis. Her father lived on a farm in Benson, Minnesota. The daughter retained a room at the farm and visited her parents about twice a month and on holidays. She kept some personal belongings there, and considered it to be her permanent residence. The daughter was not employed, and was not self-sufficient. The trial court found that the father and daughter were not residents of the same household. This court reversed, stating,

[T]he trial court erred as a matter of law when it ignored the underlying purpose of the insurance contract.

The language "resident or member of the same household" is widely used in insurance policies to both exclude and extend coverage. * * * Use of the expression in definitions of additional insureds or in clauses extending coverage (as in this case) is meant to "provide protection for those whom, because of close relationship, a person obtaining a liability insurance policy would ordinarily want it to protect."

*Skarsten*, 381 N.W.2d at 18 (citing *National Farmers Union Property & Casualty Co. v. Maca*, 26 Wis.2d 399, 405, 132 N.W.2d 517, 520 (1965)).

In *Firemen's Insurance Co. v. Viktora*, 318 N.W.2d 704 (Minn.1982), the court analyzed the question of residency in terms of three factors:

(1) Living under the same roof; (2) in a close, intimate and informal relationship; and (3) where the intended duration is likely to be substantial, where it is consistent with the informality of the relationship, and from which it is reasonable to conclude that the parties would consider the relationship "... in contracting about such matters as insurance or in their conduct in reliance thereon."

*Id.* at 706 (citing *Pamperin v. Milwaukee Mutual Insurance Co.*, 55 Wis.2d 27, 197 N.W.2d 783 (1972)).

Minnesota courts combine the first two *Pamperin* factors by defining " 'household' in its common and ordinary meaning for insurance purposes as generally synonymous with 'family' and as including those who dwell together as a family under the same roof." *Id.* at 707 (citing *Van Overbeke v. State Farm Mutual*, 303 Minn. 387, 392, 227 N.W.2d 807, 810 (1975); *Tomlyanovich v. Tomlyanovich*, 239 Minn. 250, 58 N.W.2d 855 (1953)).

Using the *Pamperin* factors, the *Skarsten* court found that the daughter was a

resident of the father's household, because although she was not living under the same roof, she was a member of the household—her absence from the family farm was temporary, she intended to return, if only for weekends and holidays, and she considered the farm her permanent residence. 381 N.W.2d at 19. *Cf. Mathis v. Employers' Fire Insurance Co.*, 399 So.2d 273, 275 (Ala.1981) ("the real test of residence is whether the absence of the [child] from the household of the alleged insured is intended to be permanent or only temporary—i.e., whether there is physical absence coupled with an intent not to return"); *American States Ins. Co. v. Walker*, 26 Utah 2d 161, 486 P.2d 1042, 1044 (1971) (residence "emphasizes membership in a group rather than an attachment to a building"; and is "a matter of intention and choice" rather than one of location).

 William's relationship with his father meets all of these requirements. William and Kenneth were part of a family, father and son, that had a close, intimate and informal relationship. Since Kenneth had requested sole custody of William, he intended his relationship with his son to have a substantial duration. William had spent all but seven months of his life in Zim. Although William was not physically living at his father's house on the day of the accident, we believe that his temporary absence from the household pending the dissolution decree should not deprive him of his status as part of the family unit who usually makes their home there. William intended to return, possibly for great lengths of time, or alternatively, as often as practicable. The Krauses sought to lend some consistency to their children's lives by having them remain with each parent for extended lengths of time, rather than shuttling them back and forth from the Twin Cities to Zim, Minnesota, a distance of approximately 200 miles. The whole family was awaiting the dissolution decree and the court's award of custody to make final plans for the children's future. During this interim period the children should be considered as part of their father's family unit, as contemplated by the statute. *See Wainscott v. Ossenkop*, 633 P.2d 237, 240 (Alaska 1981) (test whether a child is a resident of his father's household is whether father intended to be permanently separated from child, not whether father intended to be permanently separated from his wife). Thus, we hold that at the time of the accident, William was a resident of his father's household, and is entitled to uninsured motorist coverage under the Mutual Service policy.

## DECISION

The phrase "in the custody of" is ambiguous, and must therefore be construed broadly in favor of coverage. Children of divorced parents residing temporarily with one parent pending a dissolution decree awarding legal custody are residents of both parent's households for purposes of the No-Fault Act and uninsured motorist coverage.

Reversed.