**MUTUAL SERVICE CASUALTY
INSURANCE COMPANY,
Appellant,**

v.

**Greg OLSON, Michelle Bookin,
Respondents.**

No. C3-86-1401.

Court of Appeals of Minnesota.

March 24, 1987.

Review Denied May 20, 1987.

Charles B. Bateman, Duluth, for Mut. Serv. Cas. Ins. Co.

Robert H. Magie, III, Duluth, for Greg Olson.

Harry L. Newby, Jr., Newby, Lingren & Newby, Cloquet, for Michelle Bookin.

Heard, considered and decided by SEDGWICK, P.J., and LANSING and CRIPPEN, JJ.

## OPINION

SEDGWICK, Judge.

In this declaratory judgment action, Mutual Service Casualty Company ("Mutual Service") appeals from the trial court's decision that respondent Greg Olson was a resident of his mother's household and therefore an insured under her homeowner's insurance policy. We affirm.

## FACTS

Greg Olson, born November 11, 1968, is the son of Dennis and Linda Olson. Dennis and Linda were divorced in 1974, and Linda was awarded custody of Greg and his younger sister. In 1976, Dennis received custody of Greg and they moved, along with Dennis's second wife, to Cloquet, Minnesota. In 1980, Linda also moved to Cloquet, with Greg's sister and his half-brother.

The incident for which coverage is disputed occurred on November 4, 1984. Greg was spending the weekend at his mother's house, under the supervision of his older cousin, while she was out-of-town. Greg fired a rifle at a target he had attached to the shed; a bullet entered the house and struck respondent Michelle Bookin, his sister's friend.

Mutual Service had issued Linda a homeowner's insurance policy which provides:

"[I]nsured" means you and the following *residents of your household:*

a. your relatives * * *.

(Emphasis added.) The policy does not define the terms "resident" or "household," and it does not contain the names of, or number of, the individuals insured.

Although Greg's principal place of residence at the time of the accident was his father's house, he spent a considerable amount of time at his mother's house. From the time his mother moved to Cloquet until the time of the accident, Greg spent most weekdays at his father's house and most weekends, from two to four per month, at his mother's house. His mother's house was closer to school and the local hockey rink, and so he would sometimes sleep there during the week if he had late hockey practice. Greg spent almost the entire summers of 1982, 1983 and 1984 with his mother.

Greg had a key to his mother's house. He ate meals and performed various household chores there. He did not pay rent. He had his own bedroom there, and kept some clothes and personal property there, including a stereo and, depending on the season, some hockey or baseball equipment.

The trial court found that Greg would travel freely between his mother's and his father's homes, which were approximately one-and-a-half miles apart. He was able to walk or bicycle the distance easily, and he did so frequently. Dennis testified that he had an "arrangement" or "understanding" with Linda that when Greg wanted to go and stay at her home, they would both agree to it if there was no conflict in their schedules. Linda testified that Greg needed her "permission" to stay at her house, but that it was only to make sure that

someone would be there. Greg testified he could go to his mother's house anytime he wanted.

Both parents attended Greg's school conferences, gave him spending money and regularly attended his sports activities. Linda was responsible for his religious education and took him to church. Greg had a close relationship with his sister and half-brother and played with them often.

Beginning approximately one year before the accident, Greg and his parents discussed his moving back into his mother's house because he did not get along with Dennis's current wife. Around the time of the accident, Greg moved back in with his mother. Greg's statement to an insurance inspector, which was admitted into evidence, includes the following:

Q. Where were you living the day of November 4th? The day of the shooting.

A. With my father.

\* \* \* \* \* \*

Q. [O]n November 4th or right around November 4th you moved back here with your mother?

A. Yes.

Q. Why did you move here after eight years [with your father]? Can you tell me? Did it have anything to do with the shooting?

A. Yes. Problems up there.

Q. Okay. Go ahead.

A. There was problems with my step-mother.

The trial court's findings of fact include the following:

[Greg] had a close, loving relationship with both his father and his mother and spent a great deal of time with both parents.

\* \* \* \* \* \*

[Greg] was living in a close, intimate and informal relationship with both Dennis Olson at his residence and Linda Olson at her residence.

\* \* \* \* \* \*

\* \* \* [O]n November 4, 1984, [Greg] was a resident of the household of Linda Olson within the meaning and intent of the insurance provisions herein.

The court concluded that Greg was therefore an insured under her insurance policy.

## ISSUE

Did the trial court err in finding that respondent was a resident of his mother's household under her homeowner's insurance policy?

## ANALYSIS

1. *Scope and standard of review.*

 Whether a relative of an insured was residing in the insured's household is a fact question. *Fruchtman v. State Farm Mutual Automobile Insurance Co.,* 274 Minn. 54, 55, 142 N.W.2d 299, 300 (1966); *Auto-Owner's Insurance Co. v. Harris,* 374 N.W.2d 795, 797 (Minn.Ct.App.1985). Where, as here, no motion for a new trial is made, the scope of review is limited to whether the evidence sustains the findings of fact, and whether the findings of fact sustain the conclusions of law. *Auto-Owner's,* 374 N.W.2d at 797. Since a trial court's finding of residency for purposes of insurance coverage is a finding of fact, it will not be overturned unless it is clearly erroneous. *Skarsten v. Dairyland Insurance Co.,* 381 N.W.2d 16, 18 (Minn.Ct.App. 1986), *pet. for rev. denied* (Minn. Mar. 27, 1986); *see also Fireman's Insurance Co. v. Viktora,* 318 N.W.2d 704, 706 & n. 1 (Minn.1982); *Rosenberger v. American Family Mutual Insurance Co.,* 309 N.W.2d 305, 309 (Minn.1981). In light of this authority, we reject appellant's contention that the issue is one of law subject to *de novo* review.

2. *Resident of household.*

 An insurance policy is a contract, and the court's role is to determine what the agreement was and to enforce it. *Western World Insurance Co. v. Hall,* 353 N.W.2d 221, 223 (Minn.Ct.App.1984). The phrase "resident of your household" is un-

ambiguous and therefore effect must be given to its plain and common meaning; rules of construction which favor finding coverage do not apply. *E.g., Viktora,* 318 N.W.2d at 706. Use of this expression to define additional insureds, as here, is meant to "provide protection for those whom, because of close relationship, a person obtaining a liability insurance policy would ordinarily want it to protect." *Skarsten,* 381 N.W.2d at 18 (quoting *National Farmers Union Property & Casualty Co. v. Maca,* 26 Wis.2d 399, 405, 132 N.W.2d 517, 520 (1965)).

▮▮▮ Mutual Service argues that Greg can be a resident of only one household, and that household is his father's since it was Greg's primary residence and his father had custody. As a general rule, while a person can have only one domicile, he can have more than one residence. 28 C.J.S. *Domicile* § 2(a) (1941). We see no reason why a person who meets the criteria for being considered a resident of an insured's household should be precluded from coverage solely because he is also a resident of another household. In *Krause v. Mutual Service Casualty Co.,* 399 N.W.2d 597 (Minn.Ct.App.1987), we held that a child whose parents were separated could be a resident of both households under the Minnesota No-Fault Act, Minn.Stat. § 65B.43, subd. 5 (1984). Other states have also ruled that a person can be a resident of more than one household. *See, e.g., Davis v. Maryland Casualty Co.,* 76 N.C.App. 102, 331 S.E.2d 744, 746 (Ct.App.1985); *Londre v. Continental Western Insurance Co.,* 117 Wis.2d 54, 343 N.W.2d 128, 131 (Wis.Ct.App.1983); *Hartford Casualty Insurance Co. v. Phillips,* 575 S.W.2d 62, 63 (Tex.Civ.App.1978); *Miller v. United States Fidelity and Guaranty Co.,* 127 N.J.Super. 37, 316 A.2d 51, 55 (Super.Ct. App.Div.1974). We are aware of no case holding to the contrary.

Minnesota courts have used the following three-factor test developed by Wisconsin courts for determining whether a person is a resident of a named insured's household:

(1) Living under the same roof;

(2) in a close, intimate and informal relationship; and

(3) where the intended duration is likely to be substantial, where it is consistent with the informality of the relationship, and from which it is reasonable to conclude that the parties would consider the relationship " * * * in contracting about such matters as insurance or in their conduct in reliance thereon."

*Viktora,* 318 N.W.2d at 704; *see also Skarsten,* 381 N.W.2d at 19.

Minnesota courts combine the first two factors by defining "household" as being generally synonymous with "family" and as including those who dwell together as a family under the same roof. *Id.* The intended duration does not require the permanence associated with domicile, but something more is required than "a mere temporary sojourn." *Pamperin v. Milwaukee Mutual Insurance Co.,* 55 Wis.2d 27, 197 N.W.2d 783, 787–88 (1972). No one factor is controlling, but they all must "combine to a greater or lesser degree in order to establish the relationship." *Skarsten,* 381 N.W.2d at 18 (quoting *Pamperin,* 55 Wis.2d at 37, 197 N.W.2d at 789).

▮▮▮ We believe Greg meets the first two factors. The trial court found that he was living in a "close, intimate and informal relationship" with his mother at her residence, and the evidence supports this. They spent most weekends, some weekdays and the prior three summers living together as a family under the same roof. Greg had a bedroom and kept some clothes and other personal possessions at his mother's house. He had his own key to the house, did chores there and ate meals there. He also maintained a close relationship with his sister and half-brother there.

We believe Greg meets the third factor as well. Greg's living arrangement with his mother was not intended to be temporary or for a short duration. Greg and his parents were considering his moving to his mother's home on a permanent, full-time basis for approximately one year prior to the accident, and around the time of the

accident Greg did move there. Furthermore, the trial court found that because of the close relationship between Greg and his mother, it was reasonable to conclude she would consider that he was included under her homeowner's liability insurance.

Mutual Service argues that Greg fails the third factor because the intended duration of each visit was for a definite period of time for which he had obtained permission. We believe, however, that the "intended duration" factor should be applied in the broader sense of the relationship of the persons to each other and to the household, rather than to the lengths of time of individual visits. *See Pamperin*, 197 N.W.2d at 787.

Mutual Service also argues that the following facts show that Greg was not a resident of his mother's household. First, Dennis had legal custody of Greg at the time of the accident. Second, most of Greg's personal possessions were kept at his father's house and he spent most of his time there. Third, Greg told an insurance investigator before trial and testified at trial that on November 4, 1984, he was living with his father.

Those facts would be more important if Greg could only be considered a resident of one household. While they show that Greg was primarily living with his father at the time of the accident, they do not show he was not a resident of his mother's household.

Finally, Mutual Service argues that Greg's need for "permission" to go and stay at his mother's house shows they lacked the informal living arrangement necessary for him to be considered a resident. The trial court responded to this argument in its memorandum decision as follows:

"Permission" was only necessary so that Gregory's father knew that Gregory would have supervision. It appears that as long as Gregory's mother was home, that Gregory was very welcome to be at her residence. The "permission" was more a supervision check than a needed "permit" to visit. As a whole, the rela-

tionship between Gregory, his [half-brother] and sister, and mother was close, intimate and informal. It was an integrated family setting.

This characterization of the nature of Greg's relationship with his mother's household is supported by the record. The need for permission was not a reflection of formality as much as it was a reflection of Greg's young age.

## DECISION

The trial court's finding that Greg was a resident of his mother's household under her insurance policy is not clearly erroneous.

Affirmed.