AMERICAN FAMILY MUTUAL
INSURANCE COMPANY,
Respondent,

v.

Joel Robert THIEM, Appellant.

No. C2–92–2435.

Court of Appeals of Minnesota.

April 6, 1993.

Review Granted May 28, 1993.

Paul T. Benshoof, Carpenter, Benshoof & Klein, Bemidji, for respondent.

Mary L. Maring, Maring Law Office, Fargo, ND, for appellant.

Considered and decided by HARTEN, P.J., and LANSING and FOLEY,* JJ.

## OPINION

HARTEN, Judge.

Respondent American Family Mutual Insurance Company brought this lawsuit seeking declaratory judgment that its car insurance policy did not provide coverage sought by appellant Joel Robert Thiem as trustee in an action for the wrongful death of Thiem's son Joshua, age 10, resulting from a car accident. Thiem appeals summary judgment that Joshua was not an insured under the American Family policy. Thiem contends that the district court erred in declaring that Joshua was not a resident of Thiem's home by virtue of Thiem's exercise of visitation rights under a marital dissolution judgment. We reverse and remand.

## FACTS

The district court based its decision on Thiem's statement of facts as set forth below. Assuming those facts to be true, the district court concluded that Joshua was not an insured under American Family's automobile insurance policy.

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

Thiem and Joshua's mother were married in 1978. They had three children: Joshua, born in June 1980; Benjamin Joel, born in February 1983; and Aimee Louella, born in September 1985. The Thiems separated in 1986.

After separation, Thiem lived in Galveston, Texas from January to March 1986. Joshua's mother and the children remained in the family home in Detroit Lakes. In March 1986, Thiem moved to Pequot Lakes. While living in Pequot Lakes, Thiem saw his children on weekends and for four or five day intervals in Detroit Lakes.

The Thiems' marriage was dissolved on September 23, 1986. Pursuant to stipulation, Joshua's mother was given "care, custody and control" of the three children. Thiem was given reasonable visitation.

At the end of December 1986, Thiem moved to Menomonie, Wisconsin, which is 45 minutes east of the Twin Cities. Thiem lived in Menomonie until May 1987. He saw his children three or four times in Detroit Lakes for weekends or a few days longer. The children went on two weekend trips to Menomonie.

Thiem moved to Plymouth in May 1987. While in Plymouth, he saw the children twice a month, usually on weekends or for a few days longer. He took the children on trips to zoos, museums and on picnics. When Thiem was living in Plymouth, Joshua's mother moved from Detroit Lakes to Fisher, which is 250 miles from Plymouth. During the summers of 1987 and 1988, Thiem had the children at his home twice for at least a week.

In October 1988, Thiem rented a home in Pequot Lakes, which is 200 miles from Fisher. His sons and daughter had bedrooms of their own. Between October 1988 and June 1989, Thiem had the children on the Thanksgiving and New Year's holidays, on alternating weekends and for extended school breaks.

While living in Pequot Lakes, Thiem attended Joshua's basketball games and science fairs in Fisher. He drove to Fisher twice to stay in Joshua's mother's home with Joshua. Thiem would also stay with him in his mother's home when his mother was working late.

On June 3, 1989, Thiem remarried. He and his new wife moved to Bagley, which is 70 miles from Fisher. Thiem alleges that he bought a home in Bagley to be closer to his children. The children had their own rooms at the Bagley home. Thiem paid child support, health insurance premiums and bought clothing for Joshua.

While in Bagley, Thiem had the children with him on every other weekend, for alternating holidays, for six weeks during the summers of 1989 and 1990, and at other times when Joshua's mother was out of town. Thiem also saw Joshua on "spur of the moment" occasions. Thiem attended Joshua's piano recitals and drove to Fisher to watch him play basketball. He signed Joshua's third and fourth grade report cards, and attended his school conferences. There were times when Thiem stayed with the children in Fisher when Joshua's mother had to work. There were also times when Joshua's mother would call Thiem and ask him to take the children.

Joshua kept toys, sporting equipment, books, clothing, science projects, baseball posters, baseball memorabilia, yearbooks, paper, pencils and pens and stereo headphones at Thiem's Bagley home. Joshua also had his own toothbrush, wash cloth and towel there.

Joshua planted a garden, maintained it and harvested it in the summer of 1990 at Thiem's home in Bagley. While there, Joshua was responsible for cleaning his room, helping with lawn work, raking the beach and doing other household cleaning chores, sometimes for pay. Joshua always had a birthday party, including cake, balloons, streamers and friends at Thiem's house. When Joshua was with Thiem on a Sunday, they would go to church together. They also had a bedtime routine.

Thiem had taken Joshua back to Fisher on Sunday night, August 19, 1990, and was to pick him up on Friday, August 31, to go camping over Labor Day weekend. On August 31, 1990, Joshua died as a result of an accident which occurred while he was in a car being driven by his mother. Thiem

was designated trustee for Joshua's heirs and next of kin in a wrongful death action.

Thiem's automobile insurance policy with American Family, which was in effect on August 31, 1990, provided uninsured and underinsured motorist coverage. American Family brought this declaratory judgment action to determine the parties' rights under the policy.

The district court heard the parties' cross-motions for summary judgment and granted summary judgment for American Family. Thiem appeals. American Family has filed a motion to strike portions of Thiem's reply brief as raising matters for the first time on appeal.

## ISSUE

Did the district court err in entering summary judgment that Joshua was not an insured under Thiem's American Family policy?

## ANALYSIS

When this court reviews a grant of summary judgment, it considers only whether "there are any genuine issues of material fact and whether the [district court] correctly applied the law." *State Fund Mut. Ins. Co. v. Enebo*, 458 N.W.2d 161, 162 (Minn.App.1990), *pet. for rev. denied* (Minn. Sept. 20, 1990). Here, the parties contend that the facts are undisputed and only questions of law are presented. *See Iowa Kemper Ins. Co. v. Stone*, 269 N.W.2d 885, 886–87 (Minn.1978) (construction of insurance contract language is legal question applied to facts of case), *cited in Enebo*, 458 N.W.2d at 162. We note, however, that whether a named insured's relative is a resident of the insured's household is a fact question. *Mutual Serv. Casualty Ins. Co. v. Olson*, 402 N.W.2d 621, 623 (Minn.App.1987), *pet. for rev. denied* (Minn. May 20, 1987).

Our analysis begins with the insurance policy. The policy defines an "insured person" to include a "relative." The applicable definition of "relative" is

a person living in [the policyholder's] household, related to [the policyholder] by blood, marriage or adoption. This includes a ward or foster child.

"Relative" is not redefined in the uninsured and underinsured endorsements to the policy. Therefore, if Joshua was "living" in Thiem's household, he was an insured under the uninsured and underinsured endorsements of the policy. "Living in [the policyholder's] household" is not defined in the policy.

Minn.Stat. § 65B.43, subd. 5 (1990) provides, in part, that an "insured" includes a "relative of a named insured" who is

not identified by name as an insured while (a) *residing in the same household with the named insured* and (b) not identified by name in any other [automobile insurance policy] * * * as an insured.

(Emphasis added). We conclude that the policy language, "living in [the policyholder's] household," is the equivalent of the statutory language "residing in the same household with the named insured." Therefore, we are guided in our construction of the policy by prior cases construing policies using the statutory language.

As previously noted, "residency" is a fact-based question. The factors to be considered in determining residency are set out in *Firemen's Ins. Co. v. Viktora*, 318 N.W.2d 704 (Minn.1982).

In *Viktora*, [the court] quoted three circumstances the [Wisconsin Supreme Court] had identified as indicative of residency in an insured's household. Those were:

(1) Living under the same roof; (2) in a close, intimate and informal relationship; and (3) where the intended duration is likely to be substantial, where it is consistent with the informality of the relationship, and from which it is reasonable to conclude that the parties would consider the relationship " * * * in contracting about such matters as insurance or in their conduct in reliance thereon."

*Viktora*, 318 N.W.2d at 706 (quoting *Pamperin v. Milwaukee Mut. Ins. Co.*, 55 Wis.2d 27, 37, 197 N.W.2d 783, 788 (1972)). [The court] then noted that the

first two factors are encompassed by Minnesota's definition of "household," which for insurance purposes is generally defined as being synonymous with "family" and as including those who dwell together under the same roof as a family. [*Viktora,* 318 N.W.2d] at 707 (citations omitted). * * *. In addition to the first two factors, [the court] noted the existence of a significant durational component, the third circumstance enumerated in *Pamperin.* It did not, however, amplify the concept of duration by discussing or assessing whether the parties considered their relationship in contracting for * * * insurance. *Id.* * * *.

Length of stay sufficient to support a finding of residency in the insured's household, evaluated in connection with the two other factors, leads to the conclusion that the parties would expect * * * insurance to cover the entire family unit dwelling under the insured's roof. The conclusion flows from a finding of residency, rather than being itself a dispositive factor. Considering family members' relationships when renewing * * * insurance policies would be futile, since determination of residency is made as of the date the coverage becomes necessary, * * * not the date the insurance is first obtained or renewed.

*State Farm Fire & Casualty Co. v. Short,* 459 N.W.2d 111, 113–14 (Minn.1990).

The duration of the stay factor should be applied in the broader sense of the relationship of the persons to each other and to the household, rather than to the lengths of time of individual visits.

*Olson,* 402 N.W.2d at 625. Furthermore, while a person can have only one domicile, he can have more than one residence. * * *. [There is] no reason why a person who meets the criteria for being considered a resident of an insured's household should be precluded from coverage solely because he is also a resident of another household. In [*Krause v. Mutual Serv. Casualty Co.,* 399 N.W.2d 597, 599–600 (Minn.App.1987)], [the court] held that a child whose parents were separated could be a resident of

both households under the Minnesota No–Fault Act, Minn.Stat. § 65B.43, subd. 5 (1984).

*Olson,* 402 N.W.2d at 624.

■ We do not agree with the district court's summary conclusion that the

type of visitation [Thiem] had with his son was such that it would not have been reasonable for [Thiem] to consider his son when contracting for insurance.

The district court said that if it found residency here it would have to so find in every case where one former spouse had custody and the other visitation. The determination of residency should not be based on the status of the parties under a dissolution judgment, however, but on the facts of the case. American Family itself suggested at oral argument that an informal change from adjudicated custody could support a finding of residency.

This case was not presented to the district court on stipulated facts. The district court made its legal conclusion by examining the facts in the light most favorable to Thiem. We hold that summary judgment is inappropriate because there are genuine issues of material fact in dispute.

We reverse and remand to the district court for a determination of residency as a fact question. The district court should focus on the *intended* nature and extent of Joshua's stays with his father. While the time Joshua spent at his father's in the past may be relevant in deciding the contemplated nature and extent of Joshua's stays, the measure is not necessarily the proportion of the time spent with his father in the past.

We cannot agree with American Family's arguments in favor of limiting coverage. The Minnesota No–Fault Act was adopted in part to "relieve the severe economic distress of uncompensated victims of automobile accidents." Minn.Stat. § 65B.42(1) (1990). Furthermore, insurance policies may apply residency language to coverage exclusively and inclusively; however, use of residency language

in definitions of additional insureds or in clauses extending coverage * * * is meant to "provide protection for those

whom, because of close relationship, a person obtaining a liability insurance policy would ordinarily want it to protect." *Skarsten v. Dairyland Ins. Co.*, 381 N.W.2d 16, 18 ((Minn.App.1986), *pet. for rev. denied* (Minn. Mar. 27, 1986) (quoting *National Farmers Union Property & Casualty Co. v. Maca*, 132 N.W.2d 517, 520 (Wis.1965)).

Minn.Stat. § 65B.43, subd. 5 (1990) provides in whole:

"Insured" means an insured under a plan of reparation security as provided by sections 65B.41 to 65B.71, including the named insured and the following persons not identified by name as an insured while (a) residing in the same household with the named insured and (b) not identified by name in any other [insurance policy] complying with sections 65B.41 to 65B.71 as an insured:

(1) a spouse,

(2) other relative of a named insured or

(3) a minor in the custody of a named insured or of a relative residing in the same household with a named insured.

A person resides in the same household with the named insured if that person's home is usually in the same family unit, even though temporarily living elsewhere.

■ We disagree with American Family that either the No–Fault Act or the uninsured and underinsured endorsements require a party to have custody of a minor in order for the minor to be considered a resident of the party's household.[1] Such a conclusion requires an assumption that, if a relative is a minor, clause (2) does not apply, and the relative-minor can only be an insured if in the custody of a named insured. Such a conclusion does not result

from a plain reading of the statute, however.

Nor does *Krause v. Mutual Serv. Casualty Co.*, 399 N.W.2d 597, 599–600 (Minn. App.1987) require that the minor be in the custody of the policyholder. The discussion in *Krause* relied on by American Family related to PIP benefits, and, furthermore, it did not directly address whether clause (3) of the statute is a limitation on clause (2) of the statute. Additionally, the discussion in *Krause* is dictum because this court concluded that both parents had legal custody of the minor and therefore, even if clause (3) were a limitation on coverage, it would not limit coverage in that case. *Id.* at 602.

American Family also contends there is no coverage because of the following paragraph from Minn.Stat. § 65B.43, subd. 5:

A person resides in the same household with the named insured if that person's home is usually in the same family unit, even though temporarily living elsewhere.

We disagree. In *Krause*, this court cited the quoted paragraph and applied the *Viktora* factors to determine residency where the minor's parents' marital dissolution was pending. *Krause*, 399 N.W.2d at 602.

The Krauses' son lived with his father from November 1980 until July 1981. *Id.* at 599. He lived with his mother until the end of the summer, and then the parties agreed he would go to school where his mother lived. *Id.* He spent Thanksgiving and Christmas with his father. *Id.* In January, the minor son was struck "by an uninsured vehicle while crossing the street in front of his mother's home." *Id.*

This court held that the son's relationship with his father met the *Viktora* test. In finding the son was covered by the father's car insurance, this court said,

---

1. We note that the uninsured and underinsured endorsement language does not contain "custody" language at all. In the personal injury protection endorsement, however, the definition of "relative" is changed to

any person related to the [the policyholder] by ·blood, marriage or adoption. This includes a minor in custody of [the policyholder], spouse or such related person, who lives

in the same household as [the policyholder], even if temporarily living elsewhere. ·

The parties expressly advised this court at oral argument that PIP coverage was not at issue. In any event, however, a plain reading of the PIP endorsement shows that *any* relative, whether residing with the named insured or not, would be covered.

Although [the son] was not physically living at his father's house on the day of the accident, we believe that his temporary absence from the household pending the dissolution decree should not deprive him of his status as part of the family unit who usually makes their home there. *[The son] intended to return, possibly for great lengths of time, or alternatively, as often as practicable.*

*Id.* at 602 (emphasis added). The emphasized language in *Krause* indicates that the son could be considered a resident of his father's household even if his mother had custody. Therefore, we read *Krause* to accommodate a finding of residency in the instant case.

For the first time on appeal, American Family argues that Joshua was constructively a named insured under his mother's car insurance policy. We are not disturbed by the specter of double recovery raised by American Family, however. American Family's own policy has a provision entitled "Non-Duplication of Benefits" which restricts double recovery.

We deny as moot American Family's motion to strike Thiem's argument that the policy can be less restrictive than the No-Fault Act. As discussed above, we do not interpret the No-Fault Act to restrict coverage in the manner argued by American Family.

## DECISION

The district court erred as a matter of law in basing its determination of the intended nature and extent of Joshua's stays with his father solely on the time he historically spent at his father's home since the dissolution. There are genuine issues of material fact as to the intended nature and extent of Joshua's stays. Therefore, we reverse the district court's grant of summary judgment and remand for further proceedings consistent with this opinion.

Reversed and remanded.