Karolyn **FRENCH**, Appellant,

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY**, Respondent,

**Anna Marie Hay, Leah E. Scandin**, Appellants,

**Geri Marudas Simonsen, et al.,** Defendants,

**Ronald Kollar**, Appellant.

No. C9–85–551.

Court of Appeals of Minnesota.

Aug. 20, 1985.

Gilbert J. Schlagel, St. Paul, for appellant French.

Kenneth W. Dodge, Dianna Stallone, Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, Minneapolis, for respondent.

Jeffrey R. Anderson, Susan Bedor, Reinhardt & Anderson, St. Paul, for appellant, Hay.

Irving Nemerov, Minneapolis, for appellant, Scandin.

Thomas E. Moore, St. Paul, for appellant, Kollar.

Heard, considered and decided by POPOVICH, C.J., and FOLEY and LESLIE, JJ.

## OPINION

LESLIE, Judge.

Appellants Anne Marie Hay, Leah Scandin, Karolyn French and Ronald Kollar were injured in a two-car collision on June 19, 1980. David Determan was driving one of the vehicles, which was owned by Geri Marudas Simonsen, and upon trial of the liability issues David was found 100% at fault.

Simonsen's insurance was insufficient to compensate the appellants, and they sought payment under a policy of automobile insurance issued by respondent State Farm to David's parents. State Farm thereupon brought this declaratory judgment action, seeking a determination that David was not covered under his parents' policy. Cross-motions for summary judgment were filed, and the trial court granted State Farm's motion, finding that David was not a "resident" of his parents' home at the time of the accident, and was therefore not covered under their insurance policy. This appeal followed.

## FACTS

As the trial court found, the facts in this case are not in dispute. David Determan graduated from high school in 1979 and moved from his parents' home in Ogilvie, Minnesota to an apartment in Maplewood, Minnesota, where he lived while earning a living as a construction worker. In December 1979 the construction season ended and David moved back home, where he lived until late April or early May 1980. At that time, due to his parents' concern about his hours, David packed his clothing and other personal possessions, and moved out of his parents' home.

In May and June David lived in Ogilvie, either sleeping in his car or staying with friends. He did not receive money from his parents, and had his own charge accounts. He did not have a key to his parents' house, never slept there, and did not call or visit until shortly before the accident when he met with a navy recruiter at his parents' home, enlisted in the navy, and returned for a farewell dinner.

David's parents' address was listed on his driver's license, a lapsed insurance policy, and his automobile registration. He did not change his mailing address on any documents; however, he was planning to go into the navy.

On the evening before the accident, David met with the navy recruiter at his parents' home and then drove to a hotel in Minneapolis, where he spent the night. The next day he overslept and missed his physical for the navy; thus he was required to wait an extra day. That evening David met three friends and they drove back to Ogilvie to pick up his wallet, which he had left at his parents' home. The accident occurred between Minneapolis and Ogilvie.

## ISSUE

Did the trial court properly determine as a matter of law that David was not a

"resident" of his parents' household at the time of the accident?

## ANALYSIS

The Minnesota No-Fault Act defines the term "insured" to include a relative of the named insured who "resides" in the same household with the named insured and who is not identified by name in any other contract for a plan of reparation security. Minn.Stat. 65B.43, subd. 5 (1984). The Act further states: "A person resides in the same household with the named insured if that person usually makes his home in the same family unit, even though he temporarily lives elsewhere." *Id.* David is a relative of the named insured, and was not a named insured in any other contract under the Act. Thus, the only issue which the trial court addressed was whether or not David was a "resident" of his father's household at the time of the accident.

▇▇▇ The purpose of the summary judgment procedure is to make a disposition of a matter on the merits without the necessity of a trial if there are no genuine issues of material fact and only a question of law is involved. Minn.R.Civ.P. 56.03; *Holiday Acres No. 3 v. Midwest Federal Savings and Loan Assoc.*, 308 N.W.2d 471, 480 (Minn.1981); *Ahlm v. Rooney*, 274 Minn. 259, 143 N.W.2d 65 (1966). In the present situation, the trial court indicated that the parties had stipulated to the relevant facts and concluded that the ultimate interpretation of the term "reside" involved merely a "characterization" of those facts. We agree with the court that it could properly determine as a matter of law whether David "resided" with his parents, based upon the facts presented by the parties. *See LeDoux v. Iowa National Mutual Insurance Co.*, 262 N.W.2d 418 (Minn.1978); *Engeldinger v. State Automobile and Casualty Underwriters*, 306 Minn. 202, 236 N.W.2d 596 (1975).

In *Fruchtman v. State Farm Mutual Automobile Insurance Co.*, 274 Minn. 54, 142 N.W.2d 299 (1966), involving similar language,[1] the policyholder was a 27 year old emancipated son who had not been physically present in his mother's home for more than a week or two on any one occasion for approximately 2½ years prior to the accident. He had returned to his mother's home on leave from the army, en route to Chicago, when his mother was injured in an automobile accident. The court held that he and his mother were not members of the same household, despite the fact that he kept belongings at her home, used her address as his place of residence upon many occasions, and at the time of the accident was actually staying in her home. The court noted:

> The fact that the family homestead was used as plaintiff's mailing address is not decisive. It is not an unusual practice for adult, emancipated children attending college away from home, or working at summer jobs elsewhere, or serving in the armed forces, to use their parents' address as a place where mail is certain to reach them. This is not necessarily an indication of an intention to return to the family circle, but often is merely a matter of convenience. The same may be said of the fact that plaintiff kept a great many of his personal effects in his parents' home.

*Id.* at 57, 142 N.W.2d at 301. The court concluded:

> In our opinion, the words "residing in the same household" imply a more enduring relationship than was here manifested.

*Id.*

In *Rosenberger v. American Family Mutual Insurance Co.*, 309 N.W.2d 305 (Minn.1981), the injured party had moved in with her mother and stepfather, although her stay was understood to be of limited duration while she looked for a job and a place to live. A dispute arose and Rosenberger was given a two-week deadline to move out of the house. She left for a camping trip, and was injured upon her

---

1. The policy language at issue in *Fruchtman* stated that an insurer was not liable for bodily injury to the insured or any member of his family residing in the same household.

return, but before she had actually returned home. The *Rosenberger* court distinguished *Fruchtman* and found Rosenberger to be a resident of her stepfather's home, stating:

> In *Fruchtman*, the son was self-supporting while at the home; Rosenberger was not. The son in *Fruchtman* was not physically present in the home for more than 2 weeks at a time in 2½ years; Rosenberger resided in her stepfather's home for 2 months. In *Fruchtman*, the son had specific future plans to leave the home; Rosenberger had no such plans. The son in *Fruchtman* was 27 years of age; at the time of the accident, Rosenberger was 19. In *Fruchtman*, both parents and son testified that they intended no permanent relationship; here, there is a sharp conflict in the evidence.

*Id.* at 309–10.

*Pederson v. All Nation Insurance Co.*, 294 N.W.2d 693 (Minn.1980) also involved the interpretation of the phrase "residing in the same household with the named insured." The *Pederson* court refused to find such a situation where a third cousin was permitted to live in a small house 500 feet from the insured's trailer home, was given farm chores to do, and was provided meals, laundry service, some money and clothing. The cousin often disappeared from the farm, and did not socialize with the insured. Approximately one month before the cousin's accident, the insured had requested his cousin to leave. He disappeared and returned a week before the accident, when he spent one night in the house. He had dinner with the insured the next day and then went to another cousin's farm for the period of several days prior to the accident. The court found that the cousin was merely a casual farm laborer and was not a member of the insured's household at the time of the accident.

*Van Overbeke v. State Farm Mutual Automobile Insurance Co.*, 303 Minn. 387, 227 N.W.2d 807 (1975) discussed whether a person was a resident of a relative's household for purposes of a "non-owned automobile" policy provision. The defendant-insurer argued that the injured person was a resident in his parents' home because his insurance policy listed his parents' address, he indicated to the insurer when he was in the hospital that his address was his parents' address, and his automobile was at his parents' home at the time of the accident. The court found that the injured party was emancipated and residing in another town at the time of the accident, reasoning:

> He had rented an apartment in Mankato, provided for all of his own financial needs with no assistance from his parents, was employed in Mankato as well as attending school, and intended Mankato to be his residence. The fact that he continued to use the address of his parents from time to time, while a factor for consideration, does not refute the trial court's finding. It is common for young, single persons to continue to use their parents' address for some purposes, such as a permanent mailing address. The fact that plaintiff at times used his parents' address does not preclude a finding that he resided in Mankato at the time of the accident.

*Id.* at 392, 227 N.W.2d at 810.

In addition to the above cases, the trial court also relied upon *Firemen's Insurance Co. v. Viktora*, 318 N.W.2d 704 (Minn.1982). In *Viktora*, as in most of the cases discussed above, the policy provision at issue was not exactly the same as the one at issue here, but again the question concerned whether Viktora was a "resident" of his parents' home. The *Viktora* court cited *Rosenberger*, *Fruchtman* and *Van Overbeke*, and analyzed the question of residency in terms of three factors:

> (1) Living under the same roof; (2) in a close, intimate and informal relationship; and (3) where the intended duration is likely to be substantial, where it is consistent with the informality of the relationship, and from which it is reasonable

to conclude that the parties would consider the relationship "... in contracting about such matters as insurance or in their conduct in reliance thereon."

*Id.* at 706 (citations omitted). The supreme court determined that Viktora was a "resident" of his parents' household where he was living with his parents until a strike was over, he had no money to pay rent on his apartment, he ate his meals, slept, received mail and did chores at his parents' home, his mother did his laundry, he did not pay for room and board, and he and his parents enjoyed an "intimate, informal family relationship indicative of a legal residency." *Id.* at 707.

Appellants argue that the trial court "placed great emphasis" on *Viktora* and that those factors are irrelevant here since *Viktora* concerned a homeowner's policy. However, the court did not unduly emphasize the *Viktora* factors, but merely considered that case in addition to several others.

■ Based upon our reading of the above cases, we agree with the trial court that David was not a resident of his parents' home at the time of the accident. *Fruchtman* and *Van Overbeke* demonstrate that the fact that David retained his parents' mailing address is not decisive, particularly since he was going into the navy. Although David's young age might ordinarily weigh in favor of finding him a resident of his parents' household, it is significant that he had been purposely staying away from his parents' home, living with friends or in his car, and was totally self-supporting. His parents did not provide him with money, food, clothing or any other assistance, and David fully intended to leave for the navy. The record therefore supports the trial court's determination that David did not reside with his parents at the time of the accident.

## DECISION

Affirmed.