**STATE FARM FIRE AND CASUALTY COMPANY, Appellant,**

v.

**George W. LAWSON, Glenda Lawson, individually and as mother and natural guardian of Dustin Seiler, Shane Seiler and Katie Seiler, Phyllis S. Ostensoe, as guardian ad litem for Dustin Seiler, Respondents.**

**No. C6–86–1697.**

Court of Appeals of Minnesota.

May 19, 1987.

Review Denied June 30, 1987.

Elton A. Kuderer, Fairmont, for State Farm Fire and Cas. Co.

William P. Scott, Pipestone, for George W. Lawson.

DePaul D. Willette, Olivia, for Glenda Lawson.

Clarance E. Hagglund, David Oskie, Granite Falls, for Phyllis S. Ostensoe.

Heard, considered and decided by LESLIE, P.J., and SEDGWICK and HUSPENI, JJ.

## OPINION

SEDGWICK, Judge.

State Farm sought a declaratory judgment that Dustin Seiler, injured in a shooting accident in his grandfather's house, was a resident of the house and consequently excluded from insurance coverage. State Farm appeals the trial court's finding that Dustin was not a resident of George Lawson's household, and was therefore covered by his insurance policies. We affirm.

## FACTS

On May 5, 1985, Dustin Seiler, then almost eight years old, was injured in a shooting accident. While playing in their grandfather's basement, Dustin and his brother loaded and fired a twelve-gauge shotgun which struck Dustin in the chest and arm. At the time, Dustin was staying at his grandfather's house with his mother Glenda Lawson and his two siblings while they looked for a new apartment. State Farm alleges their stay constitutes residency, which qualifies as a coverage exclusion under George's policies.

Glenda, a recently divorced mother entirely dependent on AFDC payments, was in the process of moving. To save a month's rent, she asked her father, George Lawson, if she could stay at his house while he was visiting in Texas.

George and Glenda had a strained relationship and had little contact in recent years. Glenda moved in April 26. She testified she had her father's permission to stay in the house until the end of May. George's testimony was in agreement:

> Well she asked—she said that she was moving. I said * * * how long is it

going to be, a month or what * * *. She said, "Yes." I said, "That is fine."

Q. Okay, so a month was discussed?

A. Yes, it was. I don't remember exactly. I can't point to anything because it was just me and her and I said that if it is up to a month that is fine and dandy * * *.

Q. Was there any discussion about her staying there for the summer?

A. I don't let nobody stay there for the summer. She never discussed it with me and I wouldn't let her stay there for the summer period.

Q. So you are saying that when you talked with her on the telephone there wasn't any discussion about her staying all summer?

A. She knew that. She didn't have to ask. She knew that I didn't get along with her and I just did that in the kindness of my heart.

George testified he will help his kids out, but they are not to live with him and that Glenda was to be out by the time he returned. Because of the accident, George returned early; several days later father and daughter quarreled. Glenda moved out soon after.

## ISSUE

Does the evidence support the trial court's finding that mother and son were not "residents," for insurance purposes, of George Lawson's house?

## ANALYSIS

■ Whether a relative resides in the insured's household at the time of an accident is a question of fact. *Fruchtman v. State Farm Mutual Automobile Insurance Co.*, 274 Minn. 54, 55, 142 N.W.2d 299, 300 (1966). The trial court's findings are evaluated under the clearly erroneous standard. Minn.R.Civ.P. 52.01; *Skarsten v. Dairyland Insurance Co.*, 381 N.W.2d 16, 18 (Minn.Ct.App.1986), *pet. for rev. denied* (Minn. Mar. 27, 1986).

George Lawson's State Farm homeowner's policy defined "insured" as

you and the following residents of your household:

a. your relatives;

b. any other person under the age of 21 who is in the care of any person named above.

The exclusions section of liability coverages provided that

Personal Liability * * * and Medical Payments to others do not apply to:
* * *

g. bodily injury to you or any insured within the meaning of part (a) or (b) of the definition of insured.

The policy provides no definition for residence or household. Such policy terms are not ambiguous and are interpreted to effect their plain meaning. *Firemen's Insurance Co. v. Viktora*, 318 N.W.2d 704, 706 (Minn.1982).

Minnesota analyzes "residency in a household" questions according to the test utilized in *Pamperin v. Milwaukee Mutual Insurance Co.*, 55 Wis.2d 27, 37, 197 N.W.2d 783, 788–89 (1972).

(1) living under the same roof; (2) in a close intimate and informal relationship; and (3) where the intended duration is likely to be substantial, where it is consistent with the informality of the relationship, and from which it is reasonable to conclude that the parties would consider the relationship " * * * in contracting about such matters as insurance or in their conduct in reliance thereon."

*Firemen's Insurance Co. v. Viktora*, 318 N.W.2d at 706 (quoting *Pamperin* ).

■ Minnesota equates the first two factors which define "household," as synonymous with "family" for insurance purposes—"those who dwell together as a family under the same roof." *Skarsten v. Dairyland Insurance Co.*, 381 N.W.2d at 19 (citations omitted). Another important factual consideration is "the duration of stay." *Id.* No single factor controls. Rather, they all merge to create either a portrait of a relationship akin to household membership or one more transient in character.

Although Glenda Lawson resided with her children under her father's roof, he was not present and evidence indicates father and daughter did not get along. While Glenda and her children had free run of the house, they were conscious of the need to maintain the house as grandfather would like it, very organized and clean. George's willingness to open his house to Glenda was because he wouldn't be there. She needed the house for a short time until she located another apartment. George did not like his children to stay with him. These factors show no intimate relationship of a substantial duration was, or could be, planned.

Appellant argues that although Glenda planned to move, she had no particular place to go and was not actively searching for an apartment, she notified welfare that she was staying at her father's, her mail was forwarded to that address and it was given as her children's residence on school records.

The circumstances are similar to those in *Fruchtman*. The supreme court held that a household exclusion clause did not apply to an adult son out of the house for several years and only home temporarily on military leave. The court was not swayed by the fact the adult son used his parent's address for several purposes, including mail, or that at the time of accident in question he was living with his parents and "enjoying the privileges customary in a home." 274 Minn. at 56, 142 N.W.2d at 301. The court refused to accept the defendant's argument that presence constitutes residence.

> Literally applied, the construction * * would exclude coverage for any close relative who was visiting in the home and enjoying the privileges of the household, however briefly, without reference to his ultimate intention to return to some other location. In our opinion, the words "residing in the same household" imply a more enduring relationship than was here manifested. * * * [I]t is fair to infer that under the circumstances neither plaintiff nor his parents considered him a permanent part of the household but simply intended that he enjoy the status of a visitor.

*Id.*, at 57, 142 N.W.2d at 301.

Here, the trial court found that Glenda and Dustin were not residents of George's home. The court determined that

> it was the intention of the parties * * * that Glenda Lawson and her children would reside in the house of George Lawson on a strictly temporary basis and as a convenience to Glenda Lawson. It was not contemplated that George Lawson would or could reside in the same household with Glenda Lawson and her children. Even plaintiff's witness * * * testified that he was surprised that she was staying at her father's home, knowing the animosity that existed between the two.

The trial court's findings are consistent with the evidence and are not clearly erroneous.

### DECISION

A grandchild was not a resident of his grandfather's house for insurance purposes when the child's presence was intended to be of brief duration, the grandfather was never at home, and circumstances suggest the child was a visitor.

Affirmed.