Patricia A. **FREY,** as trustee for the heirs and next of kin of Stephen J. Frey, and Aven Frey, et al., Respondents,

v.

**UNITED SERVICES AUTOMOBILE ASSOCIATION, et al., Appellants.**

No. A06–2445.

Court of Appeals of Minnesota.

Jan. 8, 2008.

Timothy P. McCarthy, Jeffrey D. Bores, Chestnut & Cambronne, P.A., Minneapolis, MN, for respondents.

Robert W. Kettering, Jr., Douglas D. McGhee, Arthur, Chapman, Kettering, Smetak & Pikala, PA, Minneapolis, MN, for appellants.

Considered and decided by HALBROOKS, Presiding Judge; STONEBURNER, Judge; and MINGE, Judge.

## OPINION

MINGE, Judge.

Appellant insurer challenges the district court summary judgment determination that reduced-liability (drop-down) limit provisions in automobile insurance coverage for resident family members is ambiguous, unenforceable, and inapplicable to respondent claimant. Although we agree with appellant that the drop-down limit for resident family members are enforceable, we conclude that the drop-down limit set forth in this policy does not apply to respondent. Accordingly, we affirm.

## FACTS

On November 27, 2004, seventeen-year-old appellant Nathan Frey was involved in a one-vehicle accident while driving on Interstate 35 in Lakeville. The passengers in the car were Nathan's father (Stephen Frey), Nathan's mother (Patricia Frey), Nathan's sister (Aven Frey), and Aven's fiancé, Thomas Alexander. Aven's fiancé and Stephen Frey were killed in the accident. Aven Frey, who was a college student in Iowa at the time of the accident, and her mother Patricia sustained injuries.

Stephen Frey owned the vehicle, which was covered under a Minnesota automobile insurance policy issued to Stephen and Patricia (the Freys) by appellant United Services Automobile Association (USAA). The policy contained bodily injury liability limits of $300,000 per person or $500,000 per accident. The exclusions section of the policy contained a drop-down limit for bodily-injury liability coverage to $30,000 per person or $60,000 per accident when a "covered person" was legally liable to pay "a member of that covered person's family residing in that covered person's household." It is undisputed in this case that Nathan Frey was a covered person under the insurance policy. USAA denied coverage to Aven Frey for amounts above the policy's drop-down limits because USAA claimed Aven was residing with her brother Nathan.

Upon denial of coverage, respondents Aven Frey and Patricia Frey, individually and on behalf of the estate of Stephen Frey, filed suit against USAA and Nathan Frey seeking to have the drop-down limits on coverage for resident family members declared invalid under Minnesota law and to have Aven declared eligible to receive compensation within the remaining $500,000 policy limits. The parties moved for summary judgment. The district court granted respondents' motion. This appeal follows. For convenience, the parties are referred to in the singular as USAA and Aven.

## ISSUES

I. Is reduction of bodily-injury coverage for resident family members in an automobile insurance policy valid and enforceable?

II. On the undisputed facts in this case, was Aven a family member resid-

ing with Nathan and subject to the reduced limit under the policy?

## ANALYSIS

### I.

■ The first issue is whether an automobile insurance policy that provides for reduced-liability (drop-down) limits on bodily-injury coverage for resident family members is valid and enforceable. This is a matter of first impression in this court. Whether an insurance policy exclusion is valid and enforceable is a question of law that this court reviews de novo. *Lobeck v. State Farm Mut. Auto. Ins. Co.*, 582 N.W.2d 246, 249 (Minn.1998). The district court found the drop-down limit unenforceable because it contravenes coverage required by law, is ambiguous, and violates reasonable expectations of the insured.

### A. Compliance with the Law

■ Minnesota courts have a well-settled two-part test for determining the legal enforceability of insurance contract provisions. If the policy provisions (1) do not omit coverage required by law and (2) do not contravene applicable statutes, then the extent of the insurer's liability is governed by the terms of the contract entered into by the parties. *Am. Family Mut. Ins. Co. v. Ryan*, 330 N.W.2d 113, 115 (Minn.1983).

As for the first prong, the USAA policy purchased by Stephen Frey does not omit coverage required by Minnesota's automobile insurance laws. *See* Minn. Stat §§ 65B.001–84 (2006). The provision at issue is listed in the exclusion section of the liability portion of the policy and reads as follows:

C. There is no coverage for [bodily injury] for which a covered person becomes legally responsible to pay a member of that covered person's family

residing in that covered person's household. This exclusion applies only to the extent that the limits of liability for this coverage exceed $30,000 for each person or $60,000 for each accident.

By statute, policies must include a minimum of $30,000 of bodily-injury coverage to one person in any one accident and a minimum of $60,000 of bodily-injury coverage to two or more persons in any one accident. Minn.Stat. § 65B.49, subd. 3(1) (2006). Because the drop-down exclusion provides the required minimum coverage, we conclude that USAA's policy satisfies the first prong of the test for an enforceable insurance contract.

■ The second prong of the test for an enforceable insurance contract is that the policy provisions not otherwise contravene applicable statutes. *Ryan*, 330 N.W.2d at 115. The district court concluded that USAA's policy was invalid and unenforceable because USAA's reduction of coverage for family members (i.e., a status-based exclusion) is not one of the enumerated grounds for cancellation or reduction of liability coverage under Minnesota's law. *See* Minn.Stat. § 65B.15 (2006). But section 65B.15 deals with cancellation or reduction in limits during the policy period. *Id.* The statute enumerates eight grounds whereby an insurer may cancel or reduce liability coverage "*during the policy period of any policy.*" Minn.Stat. § 65B.15, subd. 1 (2006) (emphasis added). Because the statute only governs changes in coverage *during the policy's term*, it is not applicable to the drop-down provision at issue here. *See Royal Ins. Co. v. W. Cas. Ins. Co.*, 444 N.W.2d 846, 848 (Minn.App.1989) (holding statutory requirements of Minn. Stat. § 65B.15, subd. 1 inapplicable because insurer did not cancel policy during the term of policy). Because Minn.Stat. § 65B.15 does not apply in this case, the district court erred in finding that the

drop-down provision in USAA's policy is invalid and unenforceable under that statute.

We also note that although there is no explicit statutory prohibition on drop-down coverage, the Minnesota Department of Commerce's 2005 procedure manual had disapproved of drop-down limits on bodily-injury coverage of resident family members. Minn. Dep't of Commerce, *Private Passenger (Personal) Automobile Insurance*, 7 (2005). That disapproval was withdrawn and there is no claim that this policy provision violates or violated a regulation of the Minnesota Department of Commerce or other state agency. We conclude that USAA's policy does not contravene applicable Minnesota law.

## B. Ambiguity

 We next consider Aven's claim that the phrase "resident of your household" in USAA's insurance policy is ambiguous. Whether the language of an insurance policy is ambiguous is a question of law. *St. Paul Fire & Marine Ins. Co. v. Nat'l Computer Sys., Inc.*, 490 N.W.2d 626, 631 (Minn.App.1992), *review denied* (Minn. Nov. 17, 1992). Interpretation of insurance policy language and application of the policy to the facts in a case are also questions of law that this court reviews de novo. *Franklin v. W. Nat'l Mut. Ins. Co.*, 574 N.W.2d 405, 406 (Minn.1998). Any ambiguity is to be resolved against the insurer and in accordance with the reasonable expectations of the insured. *St. Paul Fire & Marine Ins. Co.*, 490 N.W.2d at 631.

The Minnesota Supreme Court has previously adjudicated the ambiguity of phrases regarding household residents in insurance policies. In *Lott v. State Farm Fire & Cas. Co.*, 541 N.W.2d 304, 307 (Minn. 1995), the court held that the undefined phrase "resident of your household" in a homeowner's insurance policy was unambiguous. The *Lott* court arrived at its decision simply by comparing the language in *Lott* to that considered in two prior decisions and concluding that the language at issue was very similar. *Id.* One of the prior decisions relied on by the *Lott* court was *Firemen's Ins. Co. v. Viktora*, 318 N.W.2d 704, 706 (Minn.1982), where the court concluded that the phrase "residents of the Named Insured's household" in a homeowner's insurance policy was clear and unambiguous. The second was *Tollefson v. Am. Family Ins. Co.*, 302 Minn. 1, 5, 226 N.W.2d 280, 283 (1974), where the court held that the phrase "residents of the same household" in an automobile insurance policy was unambiguous.

Because the Minnesota Supreme Court has previously held that the phrase "resident of your household" and similar phrases are unambiguous in insurance policies, we conclude that the language "resident of your household" in USAA's policy is likewise unambiguous. Therefore, the policy language is sufficiently clear to be enforceable.

## C. Reasonable–Expectations Doctrine

██ The third issue is whether the drop-down provision so violates the reasonable expectations of the insured as to render the provision unenforceable.

 The doctrine of reasonable expectations protects the objectively reasonable expectations of the insured even if close study of the insurance policy would negate those expectations. *Jostens, Inc. v. Northfield Ins. Co.*, 527 N.W.2d 116, 118 (Minn.App.1995), *review denied* (Minn. Apr. 27, 1995). The insurance policy need not be ambiguous for the doctrine to apply. *Atwater Creamery Co. v. W. Nat'l Mut. Ins. Co.*, 366 N.W.2d 271, 278 (Minn.1985). In determining the reasonable expectations of the insured, a court considers (1)

ambiguity in the language of the contract; (2) whether the insured was told of important, but obscure, conditions and exclusions or the placement of major exclusions is misleading; and (3) whether the particular provision is one known by the public generally. *See id.* The doctrine is generally applied when an insurance policy has been misrepresented or misunderstood, or when a legal technicality would defeat the insured's objectively reasonable expectations. *Reinsurance Ass'n of Minn. v. Johannessen,* 516 N.W.2d 562, 565–66 (Minn. App.1994). The doctrine of reasonable expectations does not destroy the insured's obligation to read the policy, but only holds an insured to a reasonable understanding of that policy. *Hubred v. Control Data Corp.,* 442 N.W.2d 308, 311 (Minn. 1989).

The first factor in the *Atwater* analysis looks at whether the provision in the insurance policy is ambiguous. We have already determined that the phrase "resident of your household" in USAA's policy is not ambiguous. Consequently, we conclude that the first factor favors USAA.

The second *Atwater* factor concerns the obscurity of the provision at issue. The exclusion at issue in *Atwater* was located within one of the insurance policy definitions and the court refused to enforce it because it was hidden. *Atwater,* 366 N.W.2d at 276–79. Federal courts have also found exclusions based on policy definitions that were in supplementary documents not presented to the insured to be "hidden." *Wessman v. Mass. Mut. Life Ins. Co.,* 929 F.2d 402, 406 (8th Cir.1991). Where a policy exclusion lies in the "exclusion" section of a policy, Minnesota courts have held that it is not hidden and that the insured should therefore reasonably expect the clause to limit coverage. *Bd. of Regents of Univ. of Minn. v. Royal Ins. Co. of Am.,* 517 N.W.2d 888, 891 (Minn.1994);

*Merseth v. State Farm Fire & Cas. Co.,* 390 N.W.2d 16, 18 (Minn.App.1986), *review denied* (Minn. Aug. 13, 1986).

In this case, the drop-down limit of coverage for family members is contained in the exclusions section of USAA's policy. In order to fully understand what the provision means, the reader of the policy must refer to policy definitions of "covered persons" and "family member." However, the definition of the owner and drivers as "covered persons" is what one would expect, and the phrase "family member" is not technical. More important, the drop-down provision is in the section that is clearly labeled "exclusions;" it is not hidden. Also, as previously noted, the doctrine of reasonable expectations does not eliminate the insured's obligation to read the policy. Because this was not a hidden exclusion, we conclude that the second factor favors USAA.

The remaining *Atwater* factor is whether there is general public awareness of drop-down provisions. We do not disagree with the district court that the drop-down in liability coverage may be a surprise to most policy holders. The insurance-buying public may assume that injured family members have the benefit of the full policy limits. However, this court has previously held that in the absence of an ambiguity, a hidden major exclusion, or other special circumstances, the doctrine of reasonable expectations is inapplicable. *Levin v. Aetna Cas. and Sur. Co.,* 465 N.W.2d 99, 102 (Minn.App.1991), *review denied* (Minn. Mar. 27, 1991); *Centennial Ins. Co. v. Zylberberg,* 422 N.W.2d 18, 23 (Minn.App. 1988); *Merseth,* 390 N.W.2d at 18. For the courts to assay public awareness of what is expected in an insurance policy is a speculative task that we decline to undertake based on this record. Accordingly, we conclude that the reasonable-expectations

doctrine does not render the drop-down limit unenforceable.

## D. Conclusion

Based on the foregoing, we conclude that drop-down limits on bodily-injury coverage for resident family members in the automobile insurance policy at issue in this case do not violate Minnesota automobile insurance coverage requirements, are sufficiently clear to be enforceable, and do not violate the reasonable-expectations doctrine. As a result, we conclude that such a provision is valid and enforceable.

## II.

The second issue is whether respondent Aven Frey was a family member residing with Stephen and Nathan Frey and thus subject to the drop-down coverage in the policy. It is undisputed here that Aven Frey is a "family member." This case turns on whether Aven was residing in the Stephen and Nathan Frey household at the time of the accident.

■■■ Whether an individual is a resident relative of an insured is normally a factual question. *Fruchtman v. State Farm Mut. Auto. Ins. Co.*, 274 Minn. 54, 55, 142 N.W.2d 299, 300 (1966); *State Farm Fire & Cas. Co. v. Lawson*, 406 N.W.2d 20, 22 (Minn.App.1987), *review denied* (Minn. June 30, 1987). However, when the significant, underlying facts are not in dispute, and when there is sufficient information in the record, whether an individual is a resident relative may be decided as a matter of law. *Am. Family Mut. Ins. Co. v. Thiem*, 503 N.W.2d 789, 790–91 (Minn.1993). Here, the parties filed cross-motions for summary judgment and in so doing represented that the material facts were not in dispute. *See id.* (stating by submitting cross-motions for summary judgment, parties "tacitly agreed that there exist no genuine issues of material fact"). Because the district court did not directly address or decide whether Aven resided in the Frey household and because in this appeal both parties have requested that this court make that determination on the basis of the undisputed facts in the record, we will do so.

## A. Factual Analysis

■■■ Determination of residence is an exacting task. To do so, Minnesota courts have examined the nature of the claimant's relationship with the social unit that makes up the insured's household and not simply at the claimant's connection to the place where the insured lives. *Lott*, 541 N.W.2d at 307. In looking at the nature of that relationship, we consider three factors: (1) whether the claimant and the insured are living under the same roof; (2) whether the claimant and the insured are living in a close, intimate, and informal relationship; and (3) where the intended duration is likely to be substantial, whether it is consistent with the informality of the relationship and reasonable to conclude that the parties would consider the relationship in contracting about insurance. *Viktora*, 318 N.W.2d at 706 (quoting *Pamperin v. Milwaukee Mut. Ins. Co.*, 55 Wis.2d 27, 197 N.W.2d 783, 788 (1972)); *see also Lott*, 541 N.W.2d at 307–08.

■■■ In this case, the Frey family's move from New Mexico to Minnesota coincided with Aven's move to Iowa to attend college. These moves occurred three years prior to the accident.[1] Aven returned to her parents' household for holidays and school breaks, including summer

---

1. Although the move from New Mexico to Minnesota is an unusual feature of this case, Aven's physical separation from the Frey household would be the same if the family had been in Minnesota all along.

breaks following her first and third year of college. When looking at the very limited time that Aven stayed at the Frey house during the three years after she started college, we conclude that the weight of the evidence is that Aven did not "dwell together under the same roof," as her brother or her father.

As for the second factor, we recognize that Aven undoubtedly had a close, intimate, and informal relationship with her family. Subject to the natural separation of an away-from-home college student from siblings and parents, this bond might well continue for a lifetime. However, there is a difference between being "close" and living together. Here, there is nothing to indicate that Aven was *living* in that close relationship at the time of the accident. She was engaged and was living with her fiancé. She and her fiancé had pets, certain household items, and access to each other's bank accounts. They never intended to move back in with her parents. To the extent the emphasis is placed on the word "living," Aven was living with her fiancé rather than her parents and brother. The second factor is not met.

The third factor is not clearly stated by the *Viktora* court. We understand it to ask the following: whether, based on the intended duration of Aven's stay at the Frey household and the informality of the family relationship, Stephen Frey likely considered Aven as part of the family in contracting for car insurance. We note that if the Freys did consider Aven to be part of the household, they would be expected to list her on the Minnesota policy with the rest of family. *Skarsten v. Dairyland Ins. Co.*, 381 N.W.2d 16, 19 (Minn.App.1986) (determining that inclusion of a college student daughter as an insured on the family car was strong evidence that both parents and daughter considered her to be a member of the house-

hold), *review denied* (Minn. Mar. 27, 1986). Although all of the other Freys are listed in the policy, Aven is not. Instead, Aven's parents had contracted with USAA for a separate Iowa automobile insurance policy listing Aven as the sole operator on an Iowa vehicle. This suggests that Stephen Frey did not consider Aven part of the household for the purposes of insurance coverage. Based on the foregoing analysis, we conclude that under the *Viktora–Pamperin* factors, Aven was not a resident of the Frey household.

In addition to the *Pamperin* formula, this court has used a five factor approach in determining residency: (1) age of the person; (2) whether a separate residence is established; (3) self-sufficiency of the person; (4) frequency and the duration of the stay in the family home; and (5) intent to return. *Wood v. Mut. Serv. Cas. Ins. Co.*, 415 N.W.2d 748, 750 (Minn.App.1987), *review denied* (Minn. Feb. 12, 1988).

Here, at the time of the accident, Aven Frey was 21 years old and had been attending college in Iowa for more than three years. She was an adult for all legal purposes. The age factor weighs against Aven being a resident of the Frey household.

Next we consider the self-sufficiency factor. Aven's parents paid for her college tuition, housing, health and car insurance and provided her with a car for her use. Although Aven did work during college, her earnings were not adequate to pay these expenses. Her financial dependence supports her being treated as a member of the Frey household.

The remaining factors are a mixture of presence, living arrangements, and apparent intent. Aven essentially lived at college. However, she still had a strong attachment to the Frey household. She did not stay in Iowa for college breaks or holidays. Aven spent most of her first

summer break at her parents' house in Minnesota. During her third summer break, Aven and her fiancé both stayed at her parents' house for two months. During the school year, Aven and her fiancé visited her parents during school breaks and holidays. Because she was still living with her fiancé during these visits, and the visits were temporary, they provide little support for finding her to be a resident of the Frey household.

Other considerations point toward a separate residence. At the time of the accident, Aven was in the fall semester of her fourth year at college. She received virtually all of her mail at her college address, and was a registered voter in Iowa. Aven became engaged to be married during spring of her third year at college. At the time of the accident, Aven had been living on campus with her fiancé. She and her fiancé traveled together during college breaks; they bought and sold a car together and acquired two cats, furniture, and other household belongings. During their summer breaks, they stored their furnishings in a storage locker in Iowa. During her second summer break, Aven and her fiancé took classes at Colorado College and lived together there. Upon graduation from college, Aven and her fiancé planned to marry, stay in Iowa while studying for graduate school exams, and then move to either California or Germany. Aven only periodically stayed at the Frey house, and she did not intend to return to the Frey house. For most purposes, Aven had begun a new life with her fiancé. It was a closer, more intimate relationship than Aven's relationship with her brother or her father.

On balance, the *Wood* factors indicate that Aven was not residing with her parents and brother at the time of the accident. Coupled with the foregoing *Viktora–Pamperin* analyses, we conclude that Aven Frey was not a member of the Frey household under USAA's policy and that coverage for her injuries is not restricted by the drop-down provision.

## B. Rule of Construction

The conclusion that Aven was not residing in her parents' household is reinforced by the principle that this court reads exclusions in insurance contracts narrowly against the insurer. *Hubred*, 442 N.W.2d at 310. An insurance contract should be read as a whole. *Mitsch v. Am. Nat'l Prop. & Cas. Co.*, 736 N.W.2d 355, 358 (Minn.App.2007). When unambiguous, courts should not torture insurance terms to find an ambiguity. *See Roloff v. Taste of Minn.*, 488 N.W.2d 325, 326 (Minn.App. 1992), *review denied* (Minn. Oct. 20, 1992). But when a provision of an insurance contract is capable of different interpretations, it is applied in favor of the claimant. *Travelers Indem. Co. v. Bloomington Steel & Supply Co.*, 718 N.W.2d 888, 894 (Minn. 2006).[2]

The determination of residence is difficult and susceptible to varying interpretations. *See In Re Seidel*, 204 Minn. 357, 361, 283 N.W. 742, 743 (1939) ("The word 'reside' is often used to express a different meaning according to the subject-matter."). This is especially true with college students, who are in a transition period in their lives. Insurers often argue that college students are not members of their

---

2. We note that drafting insurance policy exclusions has been the subject of critical judicial comment. *See Hayes v. Home Life Ins. Co.*, 168 F.2d 152, 154–55 (D.C.Cir.1948) ("If the [insurance] companies were permitted to write clear clauses of liability at one point and obscure negations of liability at another, and to maintain successfully the prevalence of the latter over the former, the temptation to sell one clause and defend on the other would be dangerous.").

parents' household where, in contrast to this case, non-residence limits or defeats a claim. *E.g., Schoer v. West Bend Mut. Ins. Co.*, 473 N.W.2d 73, 74 (Minn.App. 1991) (insurer arguing that first-year technical college student who "lives out of a suitcase" when away from home not a member of his mother's household); *Morgan v. Ill. Farmers Ins. Co.*, 392 N.W.2d 37, 38–39 (Minn.App.1986) (insurer arguing 21–year–old college student not member of household), *review denied* (Minn. Oct. 22, 1986). As these cases demonstrate, the issue of residence is not an uncommon subject of conflict and inconsistency.

Although uncertainty cannot be eliminated, the policy could define the term "resident" to reduce the uncertainty of its application. For example, one insurer's policy stated that the term "resident of your household" included "your unmarried and unemancipated child away at school." *Crump v. State Farm Mut. Auto. Ins. Co.*, 961 F.2d 725, 726 (8th Cir.1992). Insurers can also require insureds to specify the members of their household that the insured expects to be covered by the policy, similar to how the insured lists all of the drivers of an automobile insurance policy. *Aetna Cas. & Sur. Co. v. DeBruicker*, 838 F.Supp. 215, 222 (E.D.Pa.1993).

Because of the inherent uncertainty in the application of a residency exclusion to college students and others and because the insurers are in a position to take reasonable steps to minimize the uncertainty, exclusions from coverage should be read narrowly.[3] This applies to the policy provision at issue in this case and reinforces the finding of coverage.[4]

## DECISION

USAA's automobile insurance policy drop-down limit on bodily-injury coverage for resident family members is valid and enforceable under Minnesota law. Based on the facts in this record, we conclude that Aven Frey was not residing with a covered party under the policy. As a result, the reduced policy limits do not apply to her claim.

**Affirmed.**

STONEBURNER, Judge (concurring specially).

I concur in all but the "Rules of Construction" portions of the opinion.

HALBROOKS, Judge (dissenting).

I respectfully dissent.

I agree with the majority that the drop-down limit on bodily-injury coverage for resident family members is valid and enforceable in Minnesota. But under the applicable case law and the undisputed facts on this case, I would hold that Aven Frey was a resident of her parents' household at the time this accident occurred.

In determining whether an individual is a resident relative of an insured's household, the supreme court has set out three factors to consider, including whether the relative was

---

**3.** We do not address the question of whether Aven Frey would be a resident under the Minnesota No–Fault Act. But we do notice that the statutory language suggests a more inclusive definition, and that in the context of uncertainty, coverage is preferred by law. *See* Minn.Stat. § 65B.43, subd. 5 (2006).

**4.** This court declines an invitation to adopt a rule that we will always find against the insurer. *See Crossett v. St. Louis Fire and Marine Ins. Co.*, 289 Ala. 598, 269 So.2d 869, 874 (1972) (holding that insurance policies will be read against the drafter when excluding or extending coverage based on household residency).

(1) [l]iving under the same roof; (2) in a close, intimate and informal relationship; and (3) where the intended duration is likely to be substantial, where it is consistent with the informality of the relationship, and from which it is reasonable to conclude that the parties would consider the relationship "... in contracting about such matters as insurance or in their conduct in reliance thereon."

*Firemen's Ins. Co. of Newark v. Viktora*, 318 N.W.2d 704, 706 (Minn.1982) (quoting *Pamperin v. Milwaukee Mut. Ins. Co.*, 55 Wis.2d 27, 197 N.W.2d 783, 788 (1972)). Later, this court listed five factors to be considered, including:

(1) age of the person;

(2) whether a separate residence is established;

(3) self-sufficiency of the person;

(4) frequency and the duration of the stay in the family home; and

(5) intent to return.

*Wood v. Mut. Serv. Cas. Ins. Co.*, 415 N.W.2d 748, 750 (Minn.App.1987), *review denied* (Minn. Feb. 12, 1988).

Before applying these factors to this case, it is instructive to briefly review cases in which our courts have addressed this issue. First, cases in which the relative was determined not to be a resident will be analyzed.

In one such case, a 19–year–old relative was involved in an accident while driving an uninsured vehicle owned by his brother, who lived in the family home near Marshall with his parents. *Van Overbeke v. State Farm Mut. Auto. Ins. Co.*, 303 Minn. 387, 387–90, 227 N.W.2d 807, 808–09 (1975). The district court found that when the relative was emancipated, provided for his own financial needs with no assistance from his parents, resided, was employed and went to school in Mankato, and intended Mankato to be his residence, he was not a resident of his brother's household. *Id.* at 391–92, 227 N.W.2d at 810. The supreme court, upholding the findings as supported by the evidence, ruled that the fact that the relative continued to use his parents' address as a mailing address for some purposes did not refute the findings by the district court that he resided in Mankato, rather than at the family home, at the time of the accident. *Id.*

In another such case, a recent high school graduate sought coverage as a resident relative under his parents' policy after an accident. *French v. State Farm Mut. Auto. Ins. Co.*, 372 N.W.2d 839, 840 (Minn.App.1985). After graduation, French had moved to an apartment, earning his living as a construction worker. *Id.* Although he moved back to his parents' home for a few months after the construction season ended, he left again, due to his parents' concern about the hours he kept. *Id.* He then stayed with friends or slept in his car for several months. *Id.* French was financially independent, did not have a key to his parents' home, did not sleep there, and did not call or visit until shortly before the accident, when he enlisted in the Navy and joined his parents for a farewell dinner. *Id.* The district court granted summary judgment in favor of the insurer, determining based on these undisputed facts that French was not a resident of his parents' home at the time of the accident. *Id.* at 843. The fact that French used his parents' address on his driver's license, a lapsed insurance policy, and his automobile registration was not determinative. *Id.* at 840, 843.

There are several cases that involve facts similar to the present case, in which a college student lived away from his or her parents while attending college, visited the family home during holidays and breaks, and was not financially self-supporting. In

one such case, at the time of the accident, the 24–year–old college student attended the University of Minnesota, and lived off-campus in a duplex. *Skarsten v. Dairyland Ins. Co.*, 381 N.W.2d 16, 17 (Minn. App.1986), *review denied* (Minn. Mar. 27, 1986). She returned to the family home one or two weekends a month and on holidays, where she had her own room and left some of her belongings and which she considered to be her permanent address. *Id.* at 18. Although employed at various jobs since high school, Skarsten had never been self-sufficient. *Id.* She received some student loans and grants and was supported by her father, who claimed her as a dependent on his tax returns for five of the six previous years. *Id.* On these undisputed facts, this court held as a matter of law that she resided in the family home. *Id.* at 17, 20. In addition to the above facts, this court noted that the policy named the college student as an insured on the family car, which was strong evidence that both Skarsten and her parents considered her to be a member of the household. *Id.* at 19; *see Morgan v. Ill. Farmers Ins. Co.*, 392 N.W.2d 37, 40 (Minn.App.1986) (following *Skarsten* on similar facts and holding that where college student often lived at parents' home, stored personal possessions there, was financially supported by her parents, and had an intimate relationship with them resulted in a determination that the student was a resident relative), *review denied* (Minn. Oct. 22, 1986).

*Schoer v. W. Bend Mut. Ins. Co.*, 473 N.W.2d 73, 74, 76 (Minn.App.1991), involved a 21–year–old college student who lived in and attended a technical institute in Jackson at the time of the accident. He returned to his mother's home in Wisconsin as often as possible and considered it to be his permanent residence. *Id.* at 76. He was not totally self-sufficient and received financial support from his mother when needed. *Id.* On this record, this

court held that the jury finding that the young man was a resident of his mother's home was not contrary to the weight of the evidence. *Id.* at 77.

Turning to the facts of this case and analyzing them in light of the *Viktora* and *Wood* factors, it is undisputed that Aven and her family did not reside full-time under the same roof. *See Viktora*, 318 N.W.2d at 706 (stating that residing under the same roof a factor). She was a fourth-year college student in Iowa, living in a college dormitory with her fiancé, and returning to her parents' home for holidays and some school breaks. But the fact that Aven resided in a college dormitory does not necessarily mean that she was not a "resident" of her family's home within the meaning of relevant case law; instead, all of the factors must be considered. *See, e.g., Skarsten*, 381 N.W.2d at 19 (holding college student was a resident despite fact she was not physically residing under same roof as insured); *Schoer*, 473 N.W.2d at 74, 77 (holding that college student was resident despite fact he resided away from family home while attending technical institute). As to the factor examining whether Aven and her family were in a close, intimate, and informal relationship, that is undoubtedly the case. *See Viktora*, 318 N.W.2d at 706 (stating that nature of relationship a factor).

Aven's father, Stephen Frey, was the named insured on the policy providing coverage for the vehicle involved in this accident; Stephen, Aven's mother Patricia, and her brother Nathan and sister Elsa, but not Aven herself, were named as operators on that policy. Stephen Frey was also the named insured on the Iowa policy that insured the vehicle that Aven used at college in Iowa, which was titled in her mother's name, and on which Aven was the sole named operator.

Aven was 21 years old, and 21–year–old college students living at school have been

considered residents of their parents' homes. *See, e.g., Schoer,* 473 N.W.2d at 76 (holding fact that college student was 21 at the time of accident did not preclude him from being a resident of his mother's household); *Morgan,* 392 N.W.2d at 38 (holding that college student, who was 21 years old at the time of the accident, was considered a resident of her parents' household). But age, by itself, is not determinative. Emancipated individuals who were younger than 21 have been held to not be a resident of their parents' household. *See, e.g., Van Overbeke,* 303 Minn. at 392, 227 N.W.2d at 810 (holding that emancipated 19–year–old was not a resident of his parents' household); *French,* 372 N.W.2d at 843 (holding that the young age of relative, who had graduated from high school the year before the accident, might ordinarily weigh in favor of finding him to be a resident of parents' household, but the fact that he was emancipated led to the conclusion that he did not reside with parents at time of accident).

The financial self-sufficiency of the individual is a very significant factor in determining whether the individual is a resident relative. *See Wood,* 415 N.W.2d at 750 (setting out self-sufficiency as a factor). When young adults were self-supporting, whether in college or not, they were found to not be residents of their parents' homes. *See, e.g., Van Overbeke,* 303 Minn. at 392, 227 N.W.2d at 810 (holding that student who rented his own apartment, provided for all his own financial needs with no assistance from his parents, worked, and attended school was not a resident of parents' home); *Fruchtman v. State Farm Mut. Auto. Ins. Co.,* 274 Minn. 54, 57, 142 N.W.2d 299, 301 (1966) (holding that 27–year–old son who had been self-supporting since high school, had completed college and medical school, and was in army was not resident of parents' household); *French,* 372 N.W.2d at 843 (holding that

relative who had been totally self-supporting and did not receive money from parents was not resident of parents' home).

When young adults were not self-supporting or relied on their parents for some support, residency has generally been found. *Schoer,* 473 N.W.2d at 76 (holding that college student who was not totally self-supporting and received some financial support from mother was resident of mother's household); *Wood,* 415 N.W.2d at 751 (holding that where relative who joined army at 17 and depended on parents for some support, although he sent most of his money home and his parents could use it or send it to him as needed, was resident of parents' household); *Morgan,* 392 N.W.2d at 39 (holding that college student who received financial support from parents, who claimed student as a dependent on their tax returns, was resident relative); *Skarsten,* 381 N.W.2d at 18–19 (holding that unemployed college student who was supported by her father, who claimed her as a dependent on tax returns for five of six previous years, but who also received student loans and grants, was resident relative). Here, it is undisputed that Aven's parents financially supported her, paying for her room, board, and tuition at college, as well as providing her with a car and insuring it. While Aven held several part-time jobs while at college, including working at the college dining hall, a veterinary hospital, and a café, she never earned enough income to pay state or federal income tax or to be financially self-sufficient.

After considering the relevant case law and the facts of this case, I would conclude that as a matter of law Aven was a resident of her family's home when this accident occurred.