*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A16-0994**

Tim Johnson, et al.,
Appellants,
Michael Johnson, Trustee for the Next of Kin of Karen Johnson,
Appellant,

vs.

Ironshore Indemnity, Inc.,
Respondent.

**Filed December 12, 2016**
**Affirmed**
**Reyes, Judge**

Steele County District Court
File No. 74CV16282

Mark M. Walbran, Walbran & Furness, Chtd., Owatonna, Minnesota (for appellants Tim Johnson, et al.)

Keith L. Deike, Patton, Hoversten & Berg, P.A., Waseca, Minnesota (for appellant Michael Johnson)

Paula Duggan Vraa, Anthony J. Novak, Larson • King, L.L.P., St. Paul, Minnesota; and

Lisa F. Mickley, Hall & Evans, L.L.C., Denver, Colorado (for respondent)

Considered and decided by Reyes, Presiding Judge; Ross, Judge; and J. Smith, Judge.[*]

_____

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**REYES**, Judge

In this insurance-coverage dispute, Appellants Tim Johnson, Trevor Johnson, and Michael Johnson, as trustee for the next of kin of Karen Johnson,[1] challenge the district court's order granting summary judgment for respondent Ironshore Indemnity, Inc. (Ironshore). Because the exclusion at issue in the Johnsons' automobile insurance policy (the Ironshore policy) is both enforceable and applicable under the facts of this appeal, we affirm.

## FACTS

At all relevant times, Tim and Karen were married and resided with their son, Trevor, in Owatonna, Minnesota. Tim and Karen purchased the Ironshore policy, which afforded liability coverage to the Johnsons for a number of their classic automobiles. The Ironshore policy insures Tim and Karen as "named insureds," and Tim, Karen, and Trevor as "insureds."

Trevor was involved in a single-vehicle accident while driving a Ford Model T on vacation in Utah. Karen sustained fatal injuries as a passenger. Tim and Karen owned the Model T, which was insured under the Ironshore policy. Under a wrongful-death theory, Michael, as trustee, demanded the $500,000 general-liability limit under the Ironshore policy. Ironshore asserted that Exclusion A.13., a drop-down provision in the Ironshore policy, reduces the generally available $500,000 liability limit to the minimum

---

[1] Because appellants share the same last name, this opinion will use first names when referring to individuals and "the Johnsons" when referring to appellants collectively.

limit required under Minnesota law, $30,000 per person and $60,000 per accident, when

an insured is liable for injuries to a "family member" as defined in the Ironshore policy.[2]

The drop-down provision is included in an endorsement to the Ironshore policy's

main form and provides:

> **E.** The following Exclusion (A.13.) is added:
> We do not provide Liability Coverage for any "insured":
> **13.** For "bodily injury" to you or any "family member" to the extent that the limits of liability for this coverage exceed the minimum limits of liability required by the financial responsibility law of Minnesota.

In addition, the endorsement containing the drop-down provision defines "minimum

limits" as follows:

> **B.** The following definition is added:
> Throughout the policy, "minimum limits" refers to the following limits of liability, as required by Minnesota law, to be provided under a policy of automobile liability insurance:
> **a.** $30,000 for each person, subject to $60,000 for each accident, with respect to "bodily injury[.]"

Also, because the accident in question occurred in Utah, the parties dispute the

applicability and effect of the Ironshore policy's "Out of State Coverage" provision (out-

of-state provision), which states:

> If an auto accident to which this policy applies occurs in any state or province other than the one in which "your covered classic" is principally garaged, we will interpret your policy for that accident as follows:
> **A.** If the state or province has:
> **1.** A financial responsibility or similar law

---

[2] Karen is within the scope of the "family member" definition.

specifying limits of liability for "bodily injury" or "property damage" higher than the limit shown in the Declarations, your policy will provide the higher specified limit.

2. A compulsory insurance or similar law requiring a nonresident to maintain Insurance whenever the nonresident uses a vehicle in that state or province, your policy will provide at least the required minimum amounts and types of coverage.

The Johnsons filed a declaratory judgment action against Ironshore to determine the liability limit of the Ironshore policy. The parties filed cross-motions for summary judgment. The district court granted summary judgment for Ironshore and determined that: (1) the drop-down provision is not ambiguous and does not violate the reasonable-expectations doctrine; (2) under the Ironshore policy's terms and conditions, the correct liability limit is Minnesota's statutory minimum of $30,000; and (3) pursuant to Minnesota and Utah law, Ironshore is required to provide Minnesota's statutory minimum coverage. This appeal follows.

## DECISION

### I. The drop-down provision is enforceable and does not violate the reasonable-expectations doctrine.

The Johnsons argue that the drop-down provision is unenforceable because it violates the reasonable-expectations doctrine and, therefore, Minnesota public policy. "Whether an insurance policy exclusion is valid and enforceable is a question of law that this court reviews de novo." *Frey v. United Servs. Auto. Ass'n*, 743 N.W.2d 337, 341 (Minn. App. 2008) (citation omitted).

"The doctrine of 'reasonable expectations' protects the 'objectively reasonable

4

expectations' of insureds 'even though painstaking study of the policy provisions would have negated those expectations.'" *Jostens, Inc. v. Northfield Ins. Co.*, 527 N.W.2d 116, 118 (Minn. App. 1995) (quoting *Atwater Creamery v. W. Nat'l Mut. Ins.*, 366 N.W.2d 271, 277 (Minn. 1985)), *review denied* (Minn. Apr. 27, 1995). "In determining the reasonable expectations of the insured, a court considers (1) ambiguity in the language of the contract; (2) whether the insured was told of important, but obscure, conditions and exclusions or the placement of major exclusions is misleading; and (3) whether the particular provision is one known by the public generally." *Frey*, 743 N.W.2d at 342-43 (citing *Atwater*, 366 N.W.2d at 278). "The doctrine does not automatically remove from the insured a responsibility to read the policy." *Atwater*, 366 N.W.2d at 278. "It does, however, recognize that in certain instances, such as where major exclusions are hidden in the definitions section, the insured should be held only to reasonable knowledge of the literal terms and conditions." *Id.*

### A. Ambiguity

Under the first *Atwater* factor, we must determine whether the drop-down provision is ambiguous. Policy language "is ambiguous if it is susceptible to two or more reasonable interpretations." *Carlson v. Allstate Ins. Co.*, 749 N.W.2d 41, 45 (Minn. 2008) (citation omitted). "When insurance policy language is clear and unambiguous, 'the language used must be given its usual and accepted meaning.'" *Lobeck v. State Farm Mut. Auto. Ins. Co.*, 582 N.W.2d 246, 249 (Minn. 1998) (quoting *Bobich v. Oja*, 258 Minn. 287, 294, 104 N.W.2d 19, 24 (1960)). In *Frey*, we determined that the drop-

down provision in dispute was not ambiguous.[3] 743 N.W.2d at 342-43. The Johnsons argue that, unlike the provision in *Frey*, the specific dollar amount under the Minnesota liability limits is not presented directly in the drop-down provision, which renders it ambiguous. However, the Johnsons do not present any reasonable, alternative interpretation of the drop-down provision.

We rejected a similar argument in *Agency Rent-A-Car, Inc. v. Am. Family Mut. Auto. Ins. Co.*, 519 N.W.2d 483 (Minn. App. 1994), which involved a rental-car company's efforts to limit liability in rental contracts. The provision at issue in *Agency* provided coverage to "settle or defend . . . up to the MINIMUM dollar amount required . . . in accordance with the applicable motor vehicle financial responsibility laws of the state [of execution.]" *Id.* at 485. We determined such language clearly limited "coverage to the minimum required under Minnesota law." *Id.* at 487.

Because the Johnsons have not presented a reasonable, alternative interpretation, and in light of our prior analysis of similar provisions, we conclude that the drop-down provision is not ambiguous.

B.     **Hidden or misleading exclusions**

---

[3] The drop-down exclusion at issue in *Frey* provided:

> C. There is no coverage for [bodily injury] for which a covered person becomes legally responsible to pay a member of that covered person's family residing in that covered person's household. This exclusion applies only to the extent that the limits of liability for this coverage exceed $30,000 for each person or $60,000 for each accident.

743 N.W.2d at 341.

The Johnsons argue that the drop-down provision's two-part structure, where (1) exclusionary language is located in the drop-down provision but (2) the minimum dollar amounts under Minnesota law are found in the definition of "minimum limits," makes the provision hidden or misleading. In addition, the Johnsons argue that the drop-down provision's failure to place parentheses around "minimum limits" to indicate it as a defined term is misleading. We disagree.

Under the second *Atwater* factor, we consider "whether the insured was told of important, but obscure, conditions and exclusions or [whether] the placement of major exclusions is misleading." *Frey*, 743 N.W.2d at 343. In *Atwater*, the supreme court deemed the exclusion at issue, which was located within one of the policy's definitions, unenforceable because it was hidden. 366 N.W.2d at 276-79. However, in *Frey*, we determined the drop-down clause at issue was not hidden or misleading. 743 N.W.2d at 343. We noted that, "[i]n order to fully understand what the provision means, the reader of the policy must refer to the policy definitions" for multiple terms, but, "[m]ore important[ly], the drop-down provision is in the section that is clearly labeled 'exclusions;' it is not hidden." *Id.*

Here, the Ironshore policy's drop-down provision is identified as an exclusion, and the language used is concise and accessible. And, as discussed above, we have previously deemed a similar drop-down provision enforceable where reference was made to Minnesota's statutory minimum without presenting a specific dollar amount. *Agency*, 519 N.W.2d at 487. We conclude that the drop-down provision is not hidden or misleading.

## C. General public awareness

The third *Atwater* factor addresses whether the particular provision is one known by the public generally. "We do not disagree with the district court that the drop-down in liability coverage may be a surprise to most policy holders." *Frey*, 743 N.W.2d at 343. Therefore, because such a provision is not known by the public generally, this factor weighs in the Johnsons' favor.

We have "previously held that in the absence of an ambiguity, a hidden major exclusion, or other special circumstances, the doctrine of reasonable expectations is inapplicable." *Id.* (citing *Levin v. Aetna Cas. & Sur. Co.*, 465 N.W.2d 99, 102 (Minn. App. 1991), *review denied* (Minn. Mar. 27, 1991); *Centennial Ins. Co. v. Zylberberg*, 422 N.W.2d 18, 23 (Minn. App. 1988); *Merseth v. State Farm Fire & Cas. Co.*, 390 N.W.2d 16, 18 (Minn. App. 1986), *review denied* (Minn. Aug. 13, 1986)). Such is the case here. The drop-down provision is not ambiguous or hidden and no other special circumstances apply. Therefore, we conclude that the district court did not err in determining that the drop-down provision is enforceable and does not violate the reasonable-expectations doctrine.

## II. The Ironshore policy's out-of-state provision does not alter the application of the drop-down provision.

The Johnsons next argue that they are entitled to the full $500,000 liability limit under the Ironshore policy's out-of-state provision. Specifically, with regard to the out-of-state provision, the Johnsons argue the following: (1) Utah has a financial responsibility law, which implicates paragraph A.1. of the out-of-state provision;

8

(2) Utah's financial-responsibility law specifies a liability limit for bodily injury; and (3) the general liability limit of $500,000 under the Ironshore policy is higher than the limit specified by Utah's financial responsibility law. Since the parties previously agreed that Ironshore would prevail under paragraph A.2., the Johnsons argue that paragraph A.1. applies.

"An insurance policy is a contract to which general principles of contract law apply." *Terminal Transp., Inc. v. Minn. Ins. Guar. Ass'n*, 862 N.W.2d 487, 489 (Minn. App. 2015) (citation omitted), *review denied* (Minn. June 30, 2015). "This court reviews the district court's interpretation of a contract as a question of law subject to de novo review." *Id.* (citation omitted).

Paragraph A.1. of the Ironshore policy provides that when an insured is involved in an accident in another state, Ironshore will provide the greater of either (1) the amount available under the Ironshore policy ("the limit shown in the Declarations") or (2) the amount required under the law of the state in which the accident occurred. In short, the out-of-state provision is intended to ensure the Ironshore policy does not run afoul of another state's law in the event an accident occurs outside Minnesota.

The Johnsons argue that paragraph A.1. refers to the $500,000 liability limit presented in the Ironshore policy's declarations table. But that table also incorporates "ENDORSEMENTS MADE PART OF THIS POLICY AT THE TIME OF ISSUE" and says "[s]ee attached endorsements." "Endorsements . . . attached to an insurance contract are part of the contract, and the endorsements and the policy must be construed together." *Bobich*, 258 Minn. at 294, 104 N.W.2d at 24. The Johnsons acknowledge this reference

9

to the endorsements, which includes the drop-down provision. Because we conclude that the drop-down provision is enforceable, paragraph A.1.'s reference to "the limit shown in the Declarations" must implicate Minnesota's $30,000 statutory minimum under the drop-down provision. The Johnsons' contrary assertion, that the $500,000 liability limit is available under paragraph A.1., impermissibly renders meaningless the declarations' reference to, and incorporation of, the drop-down provision. *See id.* (advocating holistic contract construction and giving effect to all provisions).

The final step is to determine which is greater: (1) Minnesota's $30,000 statutory minimum established under the drop-down provision or (2) the statutory minimum under Utah law. Utah law provides: "Policies containing motor vehicle liability coverage may not limit the insurer's liability under that coverage below . . . $25,000 because of liability for bodily injury to or death of one person, arising out of the use of a motor vehicle in any one accident." Utah Code Ann. § 31A-22-304(1)(a) (2014). As a result, the Ironshore policy entitles the Johnsons to the $30,000 amount under the drop-down provision because that amount is greater than the $25,000 limit established under Utah law.

Therefore, we conclude that the district court did not err in determining that the Ironshore policy's out-of-state provision does not alter the application of the drop-down provision.

**Affirmed.**